CHARLES CAENEFIELT, Respondent, v. B. F. BUSH, Receiver of THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 31, 1917.

1. **NEGLIGENCE: Personal Injuries: Railroads.** Plaintiff, an employee of a grain elevator company, was assisting in putting grain cars on a scale, which was being done by means of a power plant in the elevator which operated a cable. There were three cars to be moved, one empty, the other two loaded. The cable was fastened to

the cars by attaching the end to a U-bolt on the last or rear car. The U-bolt pulled out and the cable hook struck plaintiff injuring him. He sued the railroad company. It was *held* that the demurrer to the evidence should have been sustained.

2. ————: Unwarranted Use of Appliance. Where it is shown that a U-bolt on a box car is placed thereon only to be used to pull that car alone and that when the plaintiff, an employee, not of the railroad company, but of an elevator company, was injured, they (elevator employees) were undertaking to move three cars, the U-bolt thereby subjected to a use for which it was not intended, plain-plaintiff cannot recover damages from the railroad company.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird,* Judge.

REVERSED AND REMANDED.

*White, Hackney & Lyons* for appellant.

*Haff, Merservey, German & Michaels* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a judgment, for thirty-two hundred and fifty ($3250) dollars, and defendant has appealed. Defendant urges that his demurrer to the evidence offered at the close of the entire evidence, should have been sustained.

The evidence shows that on October 7, 1915, plaintiff was employed by the Western Grain Elevator Company at its elevator in Kansas City, Missouri, in the work of assisting in the setting of cars, containing grain, on scales to be weighed. The grain company had in use for sometime prior to the accident a contrivance for the pulling of cars upon the scale. This contrivance consisted of a power plant in the basement of the elevator which operated a cable and hook, the hook was on the opposite end of the cable from the power plant and was used to fasten on to cars for the purpose of pulling the latter on to the scales. It was the practice to fasten this hook on a convenient part of the car, and when a car had a U-bolt fastened to its side, as the car involved in this case had, the hook attached to the end

of this cable was hooked into the U-bolt. The evidence further shows that the contrivance used by the elevator company was such that it was necessary to pull two or more cars at one time in order to get the front car, or the car to be weighed, upon the scales, and to attach the hook to the last or rear car.

At the time plaintiff was injured he and his fellow workmen in the employ of the elevator company were pulling three cars, each from 36 to 40 feet in length. These cars had been consigned to the elevator company and had been set by defendant on sidings at the elevator for unloading. The first car, which was on the scales, was an empty car and weighed about 38,000 pounds. The second car was loaded with grain that had a net weight of 83,840 pounds. The third car to which the cable and hook were attached to the U-bolt was likewise a car loaded with grain having a net weight of 77,700 pounds. The U-bolt was a hook shaped somewhat like the letter U, made of a piece of round iron having a diameter of about one and one-fourth inches; it was about six inches across the part parallel to the side of the car and extended out about three and a half inches from the car. It was attached to the iron sill of the car by means of nuts fastened to the two prongs of the U-bolt which were run through the holes in the sill. The nuts were screwed to these prongs on the inside of the sill. That part of the U-bolt exposed and on the outside of the sill was larger than the portion going through the sill, making shoulders in the U-bolt which fitted tightly up against the sill. The nut on the front prong of the U-bolt, or on that side of the bolt that the pull was on, was gone.

At the time plaintiff was injured he had placed the hook into the U-bolt and the cars had been moved forward from three to five feet when the nut on the rear prong of the U-bolt gave away and the U-bolt pulled out, causing the hook to strike plaintiff on the right leg, breaking the latter. An examination of the U-bolt after the accident showed it to be twisted out of shape. Its shape was perfect before the accident.

The negligence alleged in the petition was "that the said lug, or hook, on said car was out of repair and defective . . . that defendants negligently failed and neglected to inspect said car and said lug or hook as it was their duty to do and that if the same had been inspected by defendants, the fact that it was out of repair and the defective condition thereof, as heretofore set forth, would have been discovered by defendants; and defendants negligently permitted the said lug or hook on said car to get out of repair and to be and become defective as in the respects heretofore alleged."

The evidence further shows that the U-bolt was placed upon the car for the purpose of pulling its own car and none other. Defendant urges the point that plaintiff, and the elevator company that employed him, were using the U-bolt for the pulling of more that one car or for a purpose for which it was not intended, and we think under the undisputed evidence in this case this to be the fact. However, plaintiff attempted to escape the consequence of this by showing that the elevator company had been hauling cars in this manner for several months before the accident, and, in fact, had hauled as many as twelve cars at one time by means of these U-bolts, and defendants during this time had several car inspectors stationed within seventy-five feet of the elevator. It cannot be said that even though the U-bolt was being used for a purpose not intended, this fact had come to the notice of defendants and for that reason the defendants should have furnished a U-bolt sufficiently strong and secure to pull the number of cars being hauled at the time of the accident.

Defendant was under no obligation to furnish a U-bolt. There was testimony that only four railroad companies in the United States had U-bolts of this nature on their cars and that such bolts are put on merely for the convenience of the customers of the railroad. It was shown that on cars not provided with U-bolts the elevator company hooked upon various parts of such cars in accordance with its own convenience. This is not a master and servant case where the master was

required to furnish the appliances for one purpose and the servant was using it for another and subjecting it to an additional strain to that which it was intended, and the master had impliedly assented to the perverted use. In such a case the master would be in complete control of the servant and the appliance, even having the right to remove the servant for disobedience. In the case at bar plaintiff was a servant of the elevator company, the consignee, and was not the servant of the railroad company. The duty the railroad company owed plaintiff in furnishing appliances was to furnish only a suitable one for the purpose intended. While it is true it was shown that the nut on the prong of the U-bolt on the pulling side was gone, and that this side gave away first, nevertheless, the evidence all shows that this clearly was not such a glaring defect that one could say without further evidence that there could be no question but that the U-bolt was insufficient to haul one car. The U-bolt held until the three cars were moved and showed by its appearance after the accident that a tremendous strain had been put upon it.

It may be stated that defendant urges with a great deal of plausibility that the overload on the U-bolt was the sole cause of its giving away and that the absence of the nut on the front prong had nothing to do with the accident. This argument is based on the fact that no one saw the U-bolt give away and an examination of it after the accident showed that the twists found in it had taken such peculiar directions that defendant says, with some apparent force, that the rear prong gave away first and that, consequently the absence of the nut on the front prong had nothing to do with the pulling out of the U-bolt. However, in view of the finding of the jury we may assume that the front prong gave away first but we may not assume from this that the overload was not the cause of the giving away of the U-bolt.

We will not say whether under the circumstances it may have been the duty of defendant to warn plaintiff or his employer of the defect in the U-bolt, even

though they were putting it to a use for which it was not intended, as no such case is made under the pleadings. We are unwilling to say that because a railroad company knows that a consignee is putting an appliance to a use not intended that the former must furnish another appliance to meet the requirements of the new and unauthorized use. It might be that a railroad company would be liable for an injury caused by an appliance that was intended for one particular purpose and was being used for another, if some custom were shown in reference to the matter. However, in this case there was no showing as to what length of time U-bolts of this kind had been used upon cars or that anyone else aside from plaintiff and the elevator company was using these U-bolts for a purpose not intended. There is nothing in this case to show anything that approached a custom on the part of patrons of this or other railroad companies to use U-bolts for the purpose which the one in controversy was used by plaintiff and his employer.

However, plaintiff urges that defendant in his instructions submitted to the jury the question whether the U-bolt was or was not sufficient to haul the one car upon which it was attached, and as the jury found for the plaintiff the jury necessarily found that the U-bolt was not sufficient for that purpose. Of course defendant was forced into this position on account of the ruling of the court on his demurrer. There is no evidence in the record from which the jury could say whether or not the U-bolt was sufficient for the purpose of hauling the car to which it was attached; such a finding on the part of the jury was a mere speculation. [Trigg v. Ozark Land & Lumber Co., 187 Mo. 227; Goransson v. Mfg. Co., 186 Mo. 300; Warner v. Railroad, 178 Mo. 125; Spiro v. Transit Co., 102 Mo. App. 250.]

The demurrer to the evidence should have been sustained.

The judgment is reversed and the cause remanded. All concur.