# THE STATE v. JOHN CARROLL and CHARLES W. JOCOY, *alias* JOSEPH COYLER, Appellants.

Division Two, June 23, 1921.

1. **INFORMATION**: Affidavit: Omission of Statement of Official Character. Where the information states that it is upon the official oath of the prosecuting attorney and is signed by him and the affidavit by which it is verified is signed by him, the omission of a statement of his official character in connection with his signature to the oath is immaterial, not prejudicial to defendant and constitutes no ground to quash.

2. ——: **Murder: Aiding and Abetting.** The information charged that one of the defendants "feloniously, deliberately, premeditatedly and with malice aforethought did make an assault with a dangerous and deadly weapon, to-wit, an automatic pistol," etc., and that the other two defendants, "before the said felony and murder was committed in the manner and form aforesaid and by the means aforesaid, at the time and place aforesaid, did then and there unlawfully, feloniously, deliberately, premeditatedly and of their malice aforethought, incite, move, procure, abet, aid, counsel, hire and command him," etc., "to do and commit the said felony and murder aforesaid," etc., and then proceeded to charge that the three defendants, in the manner and form aforesaid, did murder deceased. *Held*, that the allegation that the two defendants were present aiding and abetting properly charged that they committed the murder.

3. **EVIDENCE**: Other Crimes. Evidence of crimes committed by a defendant other than that for which he is on trial is proper for the purpose of showing a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish proof of the other.

4. ——: ——: **Untimely Objection.** Where defendants had full knowledge that their written statements were in existence, to the effect that the three had entered into a common plan to rob and had been for three days before they killed deceased while robbing him engaged in various attempts to rob others, but waited until the statements were read to the jury before objecting, their objection came too late, even though the evidence were not competent.

State v. Carroll and Jocoy.

5  CONSPIRACY: Not Charged: Evidence and Instruction.   Where
defendants are charged with the commission of a crime, a con-
spiracy to commit crime may be shown, although the existence of
the conspiracy is not charged.   A charge that three defendants
murdered deceased, one actually shooting him and the other two
as present aiding and abetting the murder, is a charge of a con-
spiracy as an incident, and evidence to prove the conspiracy and
an instruction directing the jury's attention to it, were proper.

6. MURDER: Instruction for Second Degree.   Where there is no
evidence tending to show that the homicide was murder in the
second degree, but it indicates that the crime was murder in the
first degree or nothing, it is not error to refuse an instruction on
murder in the second degree.

7. VERDICT: Omitting Words "As Charged in the Information."
Where the information charged the defendants with murder in
the first degree, a verdict finding them "guilty of murder in the
first degree," but omitting the words "as charged in the in-
formation," even if conceded to be irregular, was in no sense
prejudicial to defendants.

8. ————: Three Defendants: Joint Verdict of Guilty: Correction.
Under the statute (Sec. 4046, R. S. 1919) when several defend
ants are jointly tried, the punishment of each, if all are con-
victed, must be separately assessed.   And a verdict that "we,
the jury, find all of the defendants and each of them guilty of
murder in the first degree and assess the punishment of John
Carroll and Charles W. Jocoy at death, and assess the punish-
ment of Walter F. Shirer at imprisonment in the penitentiary
for life" does not comply with the statute.   But another statute
(Sec. 4048, R. S. 1919) provides that where the jury assesses a
punishment not authorized by law "the court shall assess and
declare the punishment," and thereunder the court is em-
powered to correct said erroneous verdict by assessing separate
punishment against the defendants in pronouncing sentence;
and there being no other error in the case, the cause is remanded
to the trial court with directions to bring the defendants be-
fore it and separately assess and declare the punishment of
each.

Appeal from Franklin Circuit Court.—*Hon. R. A. Breu-
er*, Judge.

REVERSED AND REMANDED *(with directions)*.

*T. W. Breid, Jesse M. Owen* and *Jesse H. Schaper* for appellants.

(1)    The trial court erred in overruling the motion of defendants Carroll and Jocoy to strike out all that part of the written statements made by them to the prosecuting attorney and his assistants and read in evidence by the State relating to the acts of said defendants in holding up the taxi in the City of St. Louis, and in holding up the Ford automobile in St. Louis County, and in robbing a man in Washington of six dollars in money and in appropriating the money to themselves, for the reasons: (a) The statements of the acts of defendants so sought to be stricken out were crimes separate and independent of the crime charged against defendants in the information in this case. (b) There was no such connection between the crimes mentioned in said statements and the one charged in the information that, in proving the one, the evidence necessarily tended to prove the other. (c) There was only one crime charged in the information and the state had no legal right, proceeding by ambush, to attempt to prove other independent crimes of a different nature against defendants. (d) There was no intimation given by the State to counsel for defendants at or before the admission in evidence of the statements so made by defendants, that parts of said statements relating to other crimes were contained in said statements and were going to be read in evidence by the State. Therefore there was no opportunity afforded to counsel for defendants to make a timely objection against the admissibility of the parts of the statements relating to other crimes, and the motion to strike out did not come too late, for there was no waiver of the right to move to exclude. State v. Foley, 144 Mo. 600. (e) Counsel for defendants in making their motion to strike out the statements relating to other crimes, not only pointed out the parts of said statements sought to be stricken out, but also stated the specific grounds or defects on which

the same was based, and also at the time stated that they had no knowledge or information that the statements so read in evidence contained statements of other crimes committed by defendants and that therefore they did not make an objection to the evidence before it was read to the jury.  (f)  The trial court passed the motion of defendants to strike out and stated in the presence and hearing of the jury that it would cure the admission of said evidence by an instruction to the jury, but later overruled said motion to strike out, and at the close of all the evidence refused an instruction offered by defendants to direct the jury to disregard all said evidence relating to other crimes.  (g)  In thus overruling the motion of defendants to strike out the parts of the statements made by defendants and read in evidence by the State, the court deprived the defendants of a fundamental right guaranteed to them under Section 12 of Article 2 of the Constitution of Missouri, which provides that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies," and also under Section 22 of the same article which provides that "in criminal prosecutions the accused shall have the right  .  .  .  to demand the nature and cause of accusation."  State v. Harris, 222 S. W. 420.  (h)  The general rule is that evidence of the commission of offenses other than the one charged is inadmissible.  State v. Spray, 174 Mo. 376; People v. Molineaux, 61 N. E. 293.  (2)  The trial court erred in refusing to give legal and proper instructions asked by appellants.  (a)  Instruction One, if given, would have properly submitted to the jury the question whether the defendants or either of them was guilty of murder in the first or second degree.  R. S. 1919, sec. 3232.  (b)  Instruction Two, if given, would properly have submitted to the jury the question whether or not defendants, or either of them, was guilty of murder in the second degree.  There was evidence on which to base the instruc-

tion and it should have been given. (c) Instruction
Three was a proper direction to the jury to disregard
all that part of the statements purporting to have been
made by defendants and read in evidence by the State,
which in any manner alluded to the commission or at-
tempted commission of other offenses than that charged
in the information. (3) The trial court erred in giving
illegal and improper instructions asked by the State.
Instruction One is broader than the allegations in the
information, in that it submitted to the jury the question
as to whether or not defendants entered into a con-
spiracy to take the life of Benjamin Schowe or to do
him great bodily harm, when there was no allegation in
the information to that effect. Our Bill of Rights for-
bids such a result. Mo. Constitution, secs. 12 and 22,
art. 2; State v. Kyle, 177 Mo. 664; State v. Harris, 222
S. W. 420. (4) There was no substantial evidence in-
troduced at the trial to support the verdict of the jury,
and therefore, it should be set aside on appeal. The
information in this case did not charge that the offense
was committed by defendants pursuant to a conspiracy
or agreement between them to kill Benjamin Schowe,
or to do him great bodily harm. It was incumbent on
the state to allege and prove by substantial evidence
that there existed a conspiracy between the defendants
at and before the commission of the alleged offense. The
defendants had the right under the Constitution to de-
mand the nature and the cause of the accusation, but
this right was not accorded to defendants at the trial
of this case. Mo. Constitution, art. 2, secs. 12 and 22;
State v. Harris, 222 S. W. 420. (5) The trial court
erred in overruling appellants' motion to quash the in-
formation. (a) The information did not charge any
offense against the defendants Carroll and Jocoy known
to the laws of Missouri. (b) The information did not
charge that the offense was committed by defendants Car-
roll and Jocoy, pursuant to a conspiracy existing be-
tween them, to take the life of Schowe, or to do him great

bodily harm. (c) The information does not purport to be verified by the affidavit of the prosecuting attorney of Franklin County. (d) The information is vague, indefinite and uncertain by reason of the allegations aforesaid. (6) The trial court erred in overruling defendant's motion in arrest of judgment. The jury, in one verdict, found all of the defendants guilty of murder in the first degree and assessed the punishment of defendants Carroll and Jocoy at death, and the punishment of defendant Shirer at imprisonment in the penitentiary for life, but the jury, by their verdict, failed to find defendants guilty as charged in the information, and failed to assess the punishment of defendants Carroll and Jocoy separately, and the trial court also failed to assess and declare the punishment of Carroll and Jocoy separately or otherwise. Therefore, upon the record, the judgment is erroneous, and should be set aside on this appeal. R. S. 1919, sec. 4046; State v. Thornhill, 174 Mo. 364; State v. Gordon, 153 Mo. 576.

*Jesse W. Barrett,* Attorney-General, *Albert Miller,* Assistant-Attorney-General, for respondent; *James Booth, W. L. Cole,* and *R. W. Otto* of counsel.

(1) The court did not commit error in overruling appellants' motion to quash. (a) The information is sufficient in form and substance, and properly charges appellants with the crime of murder in the first degree. State v. Bradford, 156 Mo. 95. (b) The information is verified by the oath of the prosecuting attorney. Sec. 3849, R. S. 1919; State v. Bonner, 178 Mo. 431; State v. Schnettler, 181 Mo. 184; State v. Brown, 181 Mo. 224; State v. Brock, 186 Mo. 459; State v. Anderson, 252 Mo. 94; State v. Stewart, 274 Mo. 655. Where, in the verification of an information, the words, "prosecuting attorney" are omitted after the name of that officer appearing in the oath, that error is immaterial and constitutes no ground to quash. State v. Ferguson, 278 Mo.

130; State v. Kinney, 81 Mo. 102. Where, in the body of the information appear: "Robert W. Otto, Prosecuting Attorney within and for he County of Franklin and State of Missouri, upon his official oath as such prosecuting attorney and upon his hereunto appended oath, informs the court," the failure to insert the words "prosecuting attorney" after the name "Robert W. Otto" in the oath appended to said information does not invalidate the verification. State v. Salts, 263 Mo. 313. The omission to put the words "prosecuting attorney" after the name "Robert W. Otto," in the oath appended to the information filed herein, did not mislead appellants or prejudice their rights upon the merits of the case. State v. Brock, 186 Mo. 459, State v. Kinney, 81 Mo. 102; State v. Ferguson, 278 Mo. 130. (2) The court did not commit error in overruling appellants' motion to strike out all that part of the written statements made by them and read in evidence by the State relating to other offenses committed by appellants. (a) If the evidence offered directly tends to prove the particular crime charged, it is to be received, though it may also tend to prove the commission of another separate and distinct offense. State v. Jones, 171 Mo. 407; State v. Whitley, 183 S. W. 321; State v. Sherman, 264 Mo. 382; State v. Banks, 258 Mo. 493. (b) Evidence, which is illustrative of the principal act in the tragedy and a part of the system of criminal acts so connected together that each tends to establish the guilty intent, motive, design and purpose of the other, is competent. State v. Jones, 171 Mo. 407; State v. Collins, 181 Mo. 260; State v. Rudolph, 187 Mo. 85; State v. Bailey, 190 Mo. 280; State v. Spaugh, 200 Mo. 594; State v. Cummins, 279 Mo. 204. (c) The whole of the confession should be received in evidence in order that the jury might say whether it is entitled to credit. State v. Carlisle, 57 Mo. 106; State v. Holenscheit, 61 Mo. 307; State v. Underwood, 75 Mo. 236; State v. Jones, 171 Mo. 407. (d) An objection to the admission of a confession made by a defendant comes too late,

State v. Carroll and Jocoy.

if made for the first time after the confession was admitted and read into the record. State v. Levy, 262 Mo. 190. (e)To be available, objections to evidence must be made at the time it is offered. State v. Crab, 121 Mo. 563; State v. Leahman, 175 Mo. 625; State v. Sykes, 191 Mo. 79; State v. Jackson, 194 S. W. 1078. (3) The court correctly restricted the instructions to murder in the first degree, as there was no evidence to justify instructions for any less offense. State v. Tettaton, 159 Mo. 379; State v. Vaughan, 200 Mo. 22; State v. Vaughan, 203 Mo. 673; State v. Runfelt, 228 Mo. 454; State v. Rasco, 239 Mo. 582; State v. Lewis, 273 Mo. 525. (4) The court did not commit error in giving Instruction No. 1. (a) A party may be charged with doing an act himself and be held liable, under such charge, for being present, aiding and assisting another in doing it. Sec. 3687, R. S. 1919; State v. Orrick, 106 Mo. 119; State. v. Valle, 164 Mo. 551; State v. Sykes, 191 Mo. 78. (b) When murder is committed in the perpetration of the crime of robbery it is wholly unnecessary to do more than to make the charge in the ordinary and usual way for murder in the first degree, and then show the facts in evidence; and, if they establish that the homicide was committed in the perpetration of such robbery, this suffices. Sec. 3230, R. S. 1919; State v. Meyers, 99 Mo. 113; State v. McGinnie, 158 Mo. 122; State v. Bobbitt, 215 Mo. 33. (c) Appellants are not charged with the crime of conspiracy. Sec. 3490, R. S. 1919. (5) There is no force in the objection that the statute was disregarded in the verdict of the jury, and in the sentences by the court. The punishment of each defendant was separately assessed. Sec. 4046, R. S. 1919; State v. Hollenscheit, 61 Mo. 309; State v. Johns, 259 Mo. 364; Davis v. State, 8 Ala. App. 153; Ex Parte Davis, 184 Ala. 26; Mootry v. State, 35 Tex. Cr. 456; Polk v. State, 35 Tex. Crim. 495; Davidson and Thompson v. State, 50 Tex. Crim. 285; Woodward v. State, 84 Ark. 120; State v. Williamson, 65 S. C. 251; Meadowcroft v. People, 163 Ill. 85;

Walker v. State, 127 Pac. 895.  Should this court hold that the punishment was not assessed separately, the cause may be remanded with directions to the trial court to bring the defendants before it, and having done so, to proceed to assess and declare their punishment. State v. Taylor, 261 Mo. 225; State v. Pearson, 234 Mo. 268; State v. Gordon, 153 Mo. 577.

WHITE, C.—The appellants, with one Walter Shirer, were charged with having murdered one Benjamin Schowe, in Franklin County, on the twentieth day of November, 1920.  On a trial in that county, on December 15, 1920, the jury returned the following verdict:

"We, the jury, find all of the defendants and each of them guilty of murder in the first degree and assess the punishment of John Carroll and Charles W. Jocoy, *alias* Joseph Coyler, at death, and assess the punishment of Walter F. Shirer, *alias* Ralph Davidson, at imprisonment in the penitentiary for life.

"F. L. INGALLS, Foreman."

Carroll and Jocoy thereupon appealed in due form to this court.  Shirer did not appeal.

John Carroll and Walter Shirer became acquainted with each other in Uniontown, Pennsylvania.  Armed with automatic revolvers they started west and arrived in the City of Saint Louis Wednesday morning, November 17, 1920, three days before the homicide which occurred the Saturday following.  In Saint Louis they met the other defendant, Jocoy.  The three decided to "rob some saloons," but after a day or two of investigation they found conditions unfavorable.  They then hired a taxi and forced the chauffeur to drive then into the country, heading for Sedalia.  The machine stalled on a hillside, and they abandoned it.  In the night they attempted to steal a Ford from a farmer.  The farmer was awakened and they retreated.  Finally they took a Ford from a man who was driving along the road.  They drove westward into Washington, and there robbed a man of

six dollars, with which money they bought gasoline. They continued west in their stolen Ford, apparently driving all night Friday night. Some time that night, or Saturday morning, they had a blowout, went to a farmer's house for breakfast and telephoned to a garage at Berger for a tire, tube and some spark plugs. At that time they were west of Berger in Franklin County, near the county line, on the road toward Hermann in Gasconade County.

Benjamin Schowe was the owner of a garage at Berger, and received the telephone message. Irvin H. Perle was present and had a Ford machine. Schowe and Perle thereupon went in Perle's machine to the scene of the breakdown, with tires, tubes and spark plugs, for the purpose of making the repairs. In the meantime the three defendants had finished their breakfast at the farmhouse, and requested Perle and Schowe to place two tires and two tubes on the machine which the defendants had. While Schowe and Perle were working on the car, Carroll looked over Perle's car, which stood at a little distance from where Schowe and Perle were at work. Jocoy and Shirer walked over to Carroll, and the three defendants had a conversation in an undertone, which Perle and Schowe could not understand. After the repairs were made and the machine made ready for traveling, Schowe figured up his bill, then the three defendants drew their revolvers and ordered Schowe and Perle to put up their hands, an order with which they complied. Perle had brought in his car a single-barrel shotgun, which one of the defendants took and put in the car which they had. Shirer then was left in charge of the repaired car, with the engine running. Perle and Schowe were ordered to get in Perle's car and drive towards Berger and not "make a crooked move." Carroll and Jocoy got in the back seat with their revolvers drawn. Carroll enlivened the apprehension of Perle and Schowe by saying: "These backwoods people better not monkey with me; by the time I get through with this western part of

the country they wont know me." After Perle had driven about a quarter of a mile towards Berger, the defendants began to look for a place to turn out of the main road. Finding none they ordered Perle to turn the car around and drive the other way. In attempting to turn, the car was backed off into a ditch so that he was unable to move it. While Perle and Schowe were trying to get the car in motion, another automobile drove along the road. Carroll concealed his revolver and said, "There goes a machine; none of you fellows make a move; stand still," and the car passed on. Finding Perle's car could not be started, the appellants ordered Schowe and Perle to get out of the machine and walk back in the direction of the other car. As they had walked along they saw a hay shed near the road, and one of the appellants said, "In back of that hay shed would be a good place." Defendants afterwards said they intended to tie Schowe and Perle there until they could get away. Schowe then told the defendants they could have the tires and supplies for nothing if they would just let him go. One of the appellants replied that they knew they could get the tires for nothing. Immediately Schowe broke away and started to run back towards Berger. A shot was fired, either by Jocoy or Carroll, and Schowe was struck, the ball passing through his body. One of the defendants then commanded Perle to run; he complied, and they fired several shots which did not take effect. They said they fired into the air. Perle came up with Schowe, who was rapidly weakening, and soon fell or sat by the roadside. Perle called to some men at a farm house on the hill and told them Schowe had been shot.

There was an elevation or hill between where Schowe was shot and where Shirer was left with the other car. Shirer kept the engine running and while the events just related were occurring he ran to the top of the hill two or three times to see what was going on. After Schowe was shot and Perle had run away, Carroll and Jocoy hurried to Shirer, and the three got in the machine and drove rapidly west.

In the meantime the alarm had been sounded and the chase began. The defendants drove their car as far as Hermann in Gasconade County, there abandoned it, and took to the cornfield. The pursuit was so hot that they hid in a corn shock. The extemporized posse surrounded them and compelled them to come out, with hands up. Their automatic revolvers were found covered with dirt, under the corn shock. Schowe was taken back to Berger and died on the same day he was shot; the evidence showed that the shooting took place just east of the county line within Franklin County.

On the morning of the twenty-second the three defendants, then in custody, signified a desire to make a statement. Jocoy gave his name as Coyler, and Shirer gave his name as Davidson. They were informed that they were not obliged to make statements, and that any statements they might make would be used against them. In the presence of R. W. Otto, Prosecuting Attorney of Franklin County, and James W. Booth, assistant, each of the defendants made a statement which was taken down in shorthand by W. L. Cole, court reporter. These statements were transcribed and afterwards identified by Cole, who swore that they were true and correct statements of what each of the defendants said. In these statements defendants related the facts about the meeting of Carroll and Shirer in Uniontown, Pennsylvania, and coming west; their meeting Jocoy, and the search for saloons to rob; their stealing the automobile, and robbing a man of six dollars in Washington, and telephoning to the garage; they also told about the repair of the machine, and other events, including the shooting of Schowe, and their capture in the corn shock; all substantially as stated above and related by the other witnesses.

The defendants asserted that they only intended to tie up Perle and Schowe until they could get away, but admitted that they intended to rob Schowe of the tires and supplies which had been furnished. These statements were read to the jury.

The defendants did not testify. They introduced proof to show they had been in the United States Army, had served with the A. E. F. in France; each of them had been honorably discharged from the service. Mary Jocoy, mother of the defendant Jocoy, testified as to her son's service in the army, his good habits, and good conduct previous to his engaging in the crimes shown in the evidence here. Carroll produced a number of depositions, taken at Uniontown, Pennsylvania, to show that he had a good reputation for peace and good order, and as a law-abiding citizen. Most of the witnesses who thus testified by deposition said they had never heard his reputation discussed, therefore inferred that it was good. Carroll's father testified to his son's previous good behavior; he swore that John Carroll was twenty-two years old. Jocoy was, perhaps, a little older.

I. The defendants filed a motion to quash the information for several reasons, one of which was that it was not verified by the affidavit of the Prosecuting Attorney of Franklin County. The information

Information.

states that it is upon the official oath of Robert W. Otto, Prosecuting Attorney for Franklin County, and it is signed "Robert W. Otto, Prosecuting Attorney;" the affidavit by which the information was verified is signed "Robert W. Otto." The omission of a statement of his official character with his signature to the oath is immaterial, not prejudicial to the defendant and constituted no ground to quash. [State v. Ferguson, 278 Mo. l. c. 130; State v. Salts, 263 Mo. l. c. 313.]

It is further asserted by appellants that the information charges no offense known to the laws of the State of Missouri. It charges that November 20, 1920, in the County of Franklin, State of Missouri, John Carroll "feloniously, deliberately, premeditatedly and with malice aforethought did make an assault with a dangerous and deadly weapon, to-wit, an automatic pistol." etc. The information then alleges with sufficient particu-

larity and directness the willful aiming and discharging of the weapon, and the striking of Benjamin Schowe, causing a wound from which Schowe died on the same day, and proceeds as follows:

"That Walter Shirer, *alias* Ralph Davidson, and Charles W. Jocoy, *alias* Joseph Coyler, before the said felony and murder was committed in the manner and form aforesaid and by the means aforesaid, at the time and place aforesaid, did then and there unlawfully, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, incite, move, procure, abet, aid, counsel, hire and command him, the said John Carroll, to do and commit the said felony and murder aforesaid in the manner and form aforesaid and by the means aforesaid at the time and place aforesaid."

The information then proceeds to charge that the three defendants, in the manner and form aforesaid, did murder Benjamin Schowe. It sufficiently charges murder in the first degree against all three of the defendants. The allegation that Jocoy and Shirer were present aiding and abetting properly charges that they committed the murder. In this State there is no distinction between the principals and the accessories before the fact. [State v. Orrick, 106 Mo. 111; Section 3687, R. S. 1919.] An accessory under that section may be charged as principal. [State v. Schuchmann, 133 Mo. 111.] After stating that Shirer and Jocoy were aiding and abetting, the information charges them in direct terms with having committed the murder, making the proper charge of the crime under the statute. [State v. Sykes, 191 Mo. l. c. 79.]

II. After the statements of Carroll, Jocoy and Shirer were read to the jury, the defendants' counsel moved to strike out all that portion of Carroll's statement relating to the other robberies, on the ground that it showed the commission of other offenses for which the defendants might be tried

Other Crimes.

and convicted. Evidence of crimes committed by a defendant, other than that for which he is on trial, may be shown for the purpose of establishing a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish proof of the others. [State v. Lewis, 273 Mo. 531; State v. Bailey, 190 Mo. l. c. 280; State v. Cummins, 279 Mo. l. c. 207.]

Carroll's statement shows how he and Shirer, armed with automatics, met Jocoy, and the three "went down the street and looked around with intentions of robbing some saloons." They found nothing which favored their enterprise that night; the next morning they went out on Cherokee Street; "we looked things over out there and decided to go back that night and rob some saloons;" but they found no saloons which presented a favorable opportunity. They commandeered a taxi, impressed the driver, and drove westward. They abandoned the taxi, robbed a man in Saint Louis County of a Ford car, robbed a man in Washington of six dollars, while proceeding west; finally they attempted to rob Schowe of his tires and in that attempt murdered him. All this occurred in the course of two or three days. Carroll and Shirer arrived in Saint Louis Wednesday morning, and Saturday the murder was committed. That the three men were engaged in a common design to rob whenever opportunity presented, a definite, preconcerted plan to engage in a regular robbing expedition, appears from the language Carroll used. Evidence was admissible to prove whatever they did in pursuance of the general scheme which culminated in the murder.

Further, even if the evidence was not competent, the appellants did not make their objection in time. With full knowledge that such statements were in existence they waited until the statements of all three defendants were read to the jury; the objection came too late to be available. [State v. Frisby, 280 Mo. l. c. 83; State v. Levy, 262 Mo. l. c. 191; State v. Sykes, 191 Mo. l. c. 79; State v. Lehman, 175 Mo. l. c. 625.]

III. The appellants assign error to the giving of Instruction Number One on behalf of the State, which authorized the jury to find a verdict of guilty if they found that the defendants entered into a conspiracy, agreement, or common design to take the property of Schowe and Perle by violence and by putting them in fear; or, entered into a conspiracy or common design with each other to kill or to do the deceased or Perle some great bodily harm; and that in the prosecution of that common design, and while acting in concert, one of the defendants wilfully killed Benjamin Schowe, etc., the jury could find all the defendants guilty of murder in the first degree.

*Conspiracy.*

Complaint is made that the instruction is broader than the allegation in the information because the information does not allege that there is any conspiracy. Where a defendant is charged with the commission of a crime, the evidence of a conspiracy to commit crime may be shown, although the existence of the conspiracy is not charged in the indictment. [State v. Ruck, 194 Mo. 1. c. 433; State v. Kennedy, 177 Mo. 1. c. 119; State v. Collins, 181 Mo. 1. c. 235; 5 R. C. L. p. 1087.] Conspiracy was not the crime of which the defendants stood charged in this case. They were charged with the crime of murder and the conspiracy was an incident; the failure to allege the existence of a conspiracy neither furnished grounds for the motion to exclude evidence of such conspiracy, nor for refusing to give an instruction directing the jury's attention to it as showing the condition under which the crime was committed. [State v. Lewis, 273 Mo. 1. c. 531.]

IV. It is further claimed that the court erred in refusing an instruction offered by defendants authorizing conviction of murder in the second degree. There was no evidence tending to show that the homicide was murder in the second degree; all the evidence indicated that it was murder in the first degree or nothing, and the refusal to instruct on murder in the second degree was not erroneous.

*Instruction for Second Degree.*

[State v. Rasco, 239 Mo. 1. c. 582; State v. Lewis, 273 Mo. 1. c. 525.] The defendants, as they admitted in their statements, were attempting to commit a felony by robbing Schowe and Perle. Whether the killing was characterized by premeditation and deliberation is immaterial. [Section 3230, R. S. 1919.] The commission of, or attempt to commit, a felony is the legal equivalent or premeditation and deliberation where a homicide is committed in the perpetration or attempted perpetration of the felony. [State v. Garrett, 276 Mo. 1. c. 312; State v. Bobbitt, 215 Mo. 1. c. 33.]

V. It is claimed that the verdict is irregular in that it does not state that the defendants were found guilty "as charged in the information." The verdict finds the defendants guilty of murder in the first degree, the crime of which they are charged in the information, and it cannot be supposed that the jury were misled or did not understand what the offense was of which they found the defendants guilty; no possible prejudice could occur to the defendants by reason of that irregularity in the form of the verdict. [State v. Taylor, 261 Mo. 1. c. 224-5.]

Verdict.

The appellants claim there was error in the verdict as set out above because in violation of the statute, Section 4046, Revised Statutes 1919, which provides that when several defendants are jointly tried the punishment of each in case of conviction must be assessed separately. This court has held in several cases that the statute is mandatory, and that the assessment of a joint punishment is no assessment at all.

Section 4048, Revised Statutes 1919, provides that where the jury does not assess the punishment in their verdict, or assesses a punishment not authorized by law, "the court shall assess and declare the punishment." It is held that where a jury renders a verdict such as rendered in this case, fixing a joint punishment for crime against several defendants, the error may be cor-

rected if the trial court, in pronouncing the sentence and judgment against the defendant, assesses separately their punishments. [State v. Gordon, 153 Mo. 576; State v. Thornhill, 174 Mo. l. c. 370-371; State v. Person, 234 Mo. l. c. 267; State v. Taylor, 261 Mo. l. c. 224-5.] In the Person case, 234 Mo. l. c. 268, this court quotes the Thornhill case where the following passage appears: "In the more recent case of State v. Gordon, 153 Mo. 576, the verdict was joint and assessed the punishment at five years in the penitentiary. Judge SHERWOOD, after noting this error, said: 'The court, therefore, should either have refused to receive the verdict and suggested its being put in proper form, failing in this, should itself have assessed and declared the punishment (R. S. 1889, sec. 4230; now Sec. 2649, R. S. 1899), which the jury in this case, by their defective verdict, failed to do. For this cause alone the judgment must be reversed and the cause remanded, with directions to the trial court to bring the defendant before it, and having done so, to proceed to assess and declare his punishment, and otherwise proceed in the cause as required by law.'

"This ruling then and now commends itself, for the reason that, as no error had occurred up to the point of assessing the punishment, no rule of right or policy demanded that the whole case should be retried when the statute furnished its own corrective for such an irregularity.

"At common law no such point as this could arise, because under that system the jury merely returned the verdict of guilty, and the duty of imposing the punishment as to each defendant devolved upon the courts in accordance with the law.

"In State v. Gordon, 153 Mo. 576, it will be observed it was held that the verdict assessing the punishment of both together was in effect a failure to assess it and in such case Section 2649 provides 'the court shall assess and declare the punishment and render judgment accordingly.' "

The Person case was reversed and remanded with directions to the trial court to cause the defendant to be brought before it and to proceed to declare his punishment and to sentence him separately.

In the present case the trial court brought the defendants before it and pronounced judgment against Carroll and Jocoy in these words:

"It is therefore ordered and adjudged by the court that the said defendants John Carroll and Charles W. Jocoy, *alias* Joseph Coyler, for the offense of murder in the first degree as charged in the information and in pursuance of the verdict of the jury heretofore rendered against them, be and are hereby sentenced to death and to be taken from this court to the county jail and from there be taken by the sheriff of this county to the St. Louis jail for safe-keeping and confined until Friday the 21st day of January, 1921, and on that day each of them be taken thence by the sheriff of Franklin County, Missouri, to the place of execution, which place of execution shall be in the jail yard, or other proper place as provided by law, and there between the hours of nine o'clock a. m. and five o'clock p. m. of said 21st day of January, 1921, be by the said sheriff hanged by the neck until each of them is dead."

The judgment is reversed and the cause remanded with directions to the trial court to bring the defendants before it, and having done so to proceed to assess and declare the punishment of each of said defendants, separately; and otherwise to proceed in the cause as required by law. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.