THE STATE v. JOHN CITIUS, Appellant.—56 S. W. (2d) 72.

Division Two, December 14, 1932.

*McKay & Peal* and *Hooker & Gannon* for appellant.

*Stratton Shartel*, Attorney-General, for respondent; *Sid C. Roach* of counsel.

608

FITZSIMMONS, C.—Appellant, John Citius and also Elmer Edwards were jointly charged with robbery in the first degree by information filed by the Prosecuting Attorney of Pemiscot County, Missouri, the information also containing apt allegations intended to invoke against Citius the Habitual Criminal Act. The court granted Elmer Edwards a severance and the State elected to try appellant Citius first. He was found guilty of robbery in the first degree as charged in the information and his punishment was assessed by the jury at fifty years' imprisonment in the State Penitentiary. His motion for a new trial having been overruled and sentence having been passed, Citius appealed to this court.

The evidence showed that A. A. Polk and Nellie Polk, his wife, both of Seabrook, a town near Houston, Texas, were traveling by automobile from St. Louis towards home on Highway 61. At a point a few miles south of the city of Caruthersville in Pemiscot County, Missouri, on the night of July 13, 1931, the Polks drove into

the woods beside the highway and camped for the night. They set their cots under the trees beside the automobile and had just retired when they observed two men approaching them from the highway. Mr. Polk took his pistol from under his pillow and inquired of the men what they wanted. One of the men, whom Polk later identified as appellant John Citius, replied by inquiring: "What are you doing on my land?" Polk answered that they were stopping for the night and offered to pay for the privilege. Citius stated that he was a deputy sheriff and he ordered Mr. and Mrs. Polk to stand up. Citius had in one hand a pistol and in the other a flash light, both of which he pointed at Mr. and Mrs. Polk. Upon the statement of appellant that he was a deputy sheriff, Polk placed his own pistol upon his cot and appellant seized it, and pointed it at the Polks. Citius then ordered them to hold up their hands. They did so, and appellant directed Edwards to search them. Edwards did this. In the meantime appellant saw the rings on Mrs. Polk's fingers and he ordered her to remove the rings, with threats to shoot her if she refused. Mrs. Polk took off her rings and gave them to appellant. Polk valued his pistol at $35 and Mrs. Polk testified that the rings were worth $393. Appellant and Edwards fled after the robbery and the Polks entered their automobile and drove several miles to a point on the highway where they met a group of county officers to whom they reported that they had been held up.

The evidence further showed that Citius had been keeping company with a young woman, Irene Eastwood, who resided in Caruthersville. She testified that on the evening of the robbery Citius ate supper with her, and that about eight o'clock she and Citius entered his automobile and went riding, the woman driving. They picked up Edwards and proceeded along Highway 61. The young woman gathered from the talk of the men that they planned to "stick up" somebody. Thereupon she turned the car over to Citius to drive. While the party was passing the point where Mr. and Mrs. Polk were camped, Citius observed the Polks and he stated that they might get something there. He drove about one-fourth mile down the road, stopped, and he and Edwards left the automobile and walked back toward the camp of the Polks. Miss Eastwood remained in the automobile. In a few minutes Citius and Edwards returned to the automobile running, and they drove back to the home of Miss Eastwood, in Caruthersville, using side roads. On one of these roads Citius threw into a corn field a jumper and cap which he had worn during the evening, and at the time of the robbery to which the Polks testified.

In a few minutes after Citius and Miss Eastwood had reached her home and had parked the car in the yard and taken seats near-

by, the officers to whom the Polks had reported the robbery arrived and placed Citius under arrest. They searched appellant's automobile and found Mrs. Polk's rings hidden above the wind shield. They also found the pistol which Citius had used in the robbery in a hedge about ten feet from appellant's car. Miss Eastwood drove with the officers to a side road and there the officers found appellant's jumper and cap in the corn field at the place where Miss Eastwood had indicated. Polk's pistol was also recovered. The two pistols, the diamonds and the wedding ring, the jumper and cap and the automobile of Citius were identified by the Polks, the officers and Miss Eastwood. There was offered competent and sufficient proof that, prior to the robbery for which he was tried, appellant had been sentenced to the State Penitentiary twice in the Circuit Court of Pemiscot County and once in the Circuit Court of Stoddard County, Missouri, for separate felonies, and that he had complied with the three judgments of imprisonment.

■ ■ I. Appellant urges that the information is bad because it charges appellant and Edwards jointly with robbery in the first degree, "but in so doing charges the defendant, John Citius, under the Habitual Criminal Act, which requires additional proof to show his guilt under said act to that which was necessary to prove the guilt of his co-defendant, Elmer Edwards, and under which indictment the punishment was not uniform or equal against each defendant." This assignment is without merit. Sections 4461 and 4462, Revised Statutes 1929, form what is commonly called the Habitual Criminal Act. These statutes do not create an offense nor authorize a conviction upon the charge of being an habitual criminal. They only provide that, in case of a second conviction, the penalty to be imposed upon the defendant shall be more severe "because by his persistence in the perpetration of crime he has evinced a depravity which merits a greater punishment." [State v. Collins, 266 Mo. 93, 180 S. W. 866, 1. c. 867, citing and quoting People v. Stanley, 47 Cal. 113, 17 Am. St. Rep. 401 and other cases.] Under this statute no conviction can be had and no punishment assessed, unless the jury first finds the defendant guilty of the particular offense charged [State v. Collins, supra; State v. Bresse, 326 Mo. 885, 33 S. W. (2d) 919.] These statutes therefore do not require more proof of the guilt of appellant than of his co-defendant Edwards. Nor do they call for any additional proof whatever of appellant's guilt of the particular offense with which he was charged and for which he was on trial. While Edwards was granted a severance and appellant was separately tried, it may be observed that if they had been jointly tried, the punishment of each in case of conviction would have

been separately assessed. [Sec. 3702, R. S. 1929.] This statute is so mandatory that "the assessment of a joint punishment is no assessment at all." [State v. Carroll et al., 288 Mo. 392, 232 S. W. 699.] And the duty of the jury to fix the punishments in case of a verdict of guilty is so distinct from the primary and major duty to determine the guilt or innocence of the accused, that in case appellant and his co-defendant had been jointly tried and had been found guilty, the verdict would have been good, as a general verdict, if the jury had failed to agree upon the punishment to be inflicted or if it had not declared such punishment by its verdict. And in these circumstances it would have been the duty of the court to assess the punishments. [Sec. 3704, R. S. 1929.] This assignment therefore is ruled against appellant.

■ II. Appellant alleges that the trial court erred in refusing to sustain his oral request, at the close of all the evidence, to require the State to elect whether it would go to the jury on the charge of robbing A. A. Polk or of robbing Nellie Polk. The ruling of the trial court was not error. In the early case of Lorton v. State, 7 Mo. 55, appellant Lorton was charged in separate indictments with the theft of personal property of one Curle and also of one Gibson. He was caught in a hotel room, occupied by Curle and Gibson, and he confessed that he had been concerned with another in the theft of the property from the room, while the owners slept. Lorton pleaded guilty to the first indictment and was sentenced to two years in prison. He was then put on trial under the second indictment. The court refused to give an instruction requested by appellant to the effect that if the goods of Curle and Gibson were stolen at one and the same time, then the circumstance that the goods belonged to separate owners did not constitute separate offenses but was one transaction and the former conviction under the first indictment operated as a bar to the second indictment. From an adverse judgment, Lorton appealed and this court at the May Term, 1841, ruled (7 Mo. 55, 1. c. 57) : "The court should have given the instructions asked by the prisoner. The stealing of several articles of property, at the same time and place, undoubtedly constitutes but one offense against the laws, and the circumstance of several ownerships cannot increase or mitigate the nature of the offense." Lorton v. State has been cited often in this State and in other jurisdictions on the point raised. Missouri cases stating the rule in the Lorton case are State v. Daniels, 32 Mo. 558; State v. O'Connell, 144 Mo. 387, 46 S. W. 175; State v. Maggard, 160 Mo. 469, 61 S. W. 184. For learned research upon the question reference is made to State v. Toombs,

326 Mo. 981, 34 S. W. (2d) 61, which reviews authorities from many jurisdictions supporting the principle of the Lorton case.

It is obvious that the robbery of the Polks was one transaction at one time and place and was but one offense. Therefore if appellant had been charged separately he might have pleaded a conviction in one case in bar of the prosecution of the second case. Appellant's cited authorities are not in point. State v. Healy, 50 Mo. App. 243, held bad an indictment which charged in one count two separate publications of libelous matter. State v. Link, 315 Mo. 192, 286 S. W. 12, ruled that, defendant having been charged in different counts of one indictment with the separate offenses of making and selling moonshine, the State would have been required to elect upon which count it would stand. Kelley's Criminal Law and Procedure (4 Ed.) sec. 200, p. 153, cited by appellant, states the general rule that the indictment or information must not charge two or more distinct offenses in one count. But the same authority, in the same section, also points out that an indictment or information is not bad for duplicity in charging defendant in one count with ''several felonious acts in respect to several persons as assaulting A and B, and robbing A of one shilling and B of two, it being one transaction, or receiving and concealing stolen goods or stealing at the same time and place several articles owned by different persons.'' Many authorities are cited in support of these several illustrations. This assignment is ruled against appellant.

■ III. Appellant urges that the main instruction was prejudicially erroneous. With parts omitted not necessary to a statement of the objection raised, the substance of the instruction was that the jury should find appellant guilty of robbery in the first degree if he, either alone or acting with another or others, made an assault on Polk and Mrs. Polk or either of them and that Citius by violence to or by putting them in fear of immediate injury to their person by means of a dangerous and deadly weapon, etc., ''did take from the person of him the said A. A. Polk or her, the said Nellie Polk,'' one ladies' diamond ring, one diamond ring, one gold wedding ring and one 38 caliber Colt's revolver, of certain specified values, with the intent to rob, etc., and that said property was the property of the said A. A. Polk or Nellie Polk. The information charged that Citius and Edwards made an assault on Mr. and Mrs. Polk with a dangerous and deadly weapon, etc., and by force and violence to the persons of Polk and Mrs. Polk, and by putting them in fear of some immediate injury to their persons by means of the aforesaid dangerous and deadly weapon, did rob, steal, etc., one ladies' diamond ring, one diamond ring and one gold wedding ring, of specified values, ''the

property of Nellie Polk," and "one 38 caliber Colt's revolver of the value of $35.00," the property of the said A. A. Polk.. The objection to the instruction is that, while the information charged appellant and his codefendant with robbing Mrs. Polk of three rings *and* Mr. Polk of a pistol, the instruction informed the jury that they should find appellant guilty if he robbed *either* Mr. Polk *or* Mrs. Polk.

It seems to us that the unity of the offense charged, stamped as it is by the evidence as "one transaction," takes it out of a class of cases which at first glance give support to the assignment. These cases are marked by a divisibility of offenses or wrongful actions that is absent here. State v. Washington, 242 Mo. 401, 146 S. W. 1164, and State v. Jackson, 242 Mo. 410, 146 S. W. 1166, were companion cases, based on the same indictment, but prosecuted separately by reason of a severance. The charge was that the defendants did "set up and keep divers gaming tables and gambling devices, to-wit: one crap table commonly so called and one poker table commonly so called," etc. The instruction in each case told the jury that they should find the defendant guilty if they found from the evidence that the defendant did "set up and keep certain gaming tables and gambling devices, to-wit; a crap table—and poker table— or either of them." Both of these were reversed and remanded for the reason that, under the instructions given and the general verdicts returned, the jury might have convicted the defendants of keeping either of the two tables charged, or some of the jurors might have agreed to the verdict of one table while others reached the same result as to the other table. The court in these opinions pointed out that the setting up and keeping of either table was an offense and that it could not be determined from the records in the cases which of the tables the defendants were found guilty of setting up and keeping. The Washington and Jackson cases are cited in the following: In the case of State v. Geist, 196 Mo. App. 393, 199 S. W. 1041, the separate concurring opinion of TRIMBLE, J., condemns an instruction under a charge of the unlawful sale of intoxicating liquor, with evidence of several different sales. In the case of City of Mexico v. Gray, 203 Mo. App. 547, 219 S. W. 707, the defendant was charged in one count with the unlawful delivery of intoxicating liquor and in the second count with unlawful sale. The jury returned a verdict of guilty as charged in the information. The proof produced only went to support the charge in the first count and the cause was reversed and remanded for the uncertainty revealed by the general verdict. In State v. Frazier, 217 Mo. App. 524, 269 S. W. 410, the defendant was charged in three counts with having in his possession "a certain doubler, worm, fermenting tub, mash

tub and still.'' The court instructed the jury to find the defendant guilty if they should find that he had in his possession the doubler, worm, fermenting tub, mash tub or still, ''fit to be used and capable of being used in the production of intoxicating liquor.'' There was a general verdict of guilty as charged in the first count. The opinion of the court shows that there was no evidence that the defendant had in his possession either a doubler or a still or a mash tub. But there was evidence that he possessed a coil of copper pipe, which the State's witnesses described as a worm. In view of the charge made conjunctively and instruction given disjunctively, the absence of proof of all but one of the designated articles and finally because of the general verdict, the judgment was reversed and the cause remanded.

State v. Moon et al., 221 Mo. App. 592, 283 S. W. 468, l. c. 471, distinguishes the facts there from the Jackson, Geist and Frazier cases. In the Moon case the defendant charged that the court erred in giving an instruction telling the jury that they could convict the defendants either of using a still or of having a still in their possession. The court stated in its opinion: ''It is difficult to imagine a case where one could use a still for the purpose of manufacturing liquor and not at the same time 'have' the still.'' In pointing out the difference between the facts in the Moon case and in the Jackson and other cases mentioned, the court in its opinion (283 S. W. l. c. 471) said: ''Here there was no evidence from which the jury could possibly find that the defendants, or any one of them, were guilty of having one still without finding them guilty of having the other. The evidence was that the two stills were upon two stoves, in close proximity and in the same room, which was locked. Neither one of the defendants was seen in this room. They both denied having any knowledge of the stills. Under the evidence they were guilty of having both stills or not guilty at all.'' The foregoing statement of facts exactly fits the instant case. Appellant Citius, testifying in his own behalf, denied that he robbed the Polks and he set up an alibi. Under the evidence either he was guilty of having robbed both Mr. and Mrs. Polk or he was not guilty of having robbed either one of them. Other cases citing the Jackson and Washington cases reflect the same separate nature of the wrongful acts proved, followed by a general verdict and need not therefore be enlarged upon here.

A first degree robbery case, more to the point of the question under discussion, is State v. Carolla, 316 Mo. 213, 292 S. W. 721. Counsel for appellant charged that a given instruction was duplicitous because in its definition of the offense alleged it used the words ''from his person, or in his presence, and against his will, by violence to

his person or by putting him in fear of some immediate injury to his person." Appellant contended that the instruction should have used the conjunction "and" instead of "or," and cited State v. Grossman, 214 Mo. 233, 113 S. W. 1074. This court, in ruling against this assignment, said: "In the Grossman case the verdict finding the defendant guilty of selling or otherwise disposing of liquor on Sunday, as charged in the information, was held not responsive to the issues where the information charged several offenses conjunctively. The information in this case charges the defendant with one offense, taking 'the money and personal property of the said John W. Clohse, from the person and against the will,' etc." We therefore find no prejudicial error in the instruction assailed in the instant case.

■ IV. Appellant attacks an instruction which is not numbered but is fifth in the order given. The instruction informed the jury that if they found and believed from the evidence beyond a reasonable doubt that defendant had been convicted of three specified felonies and had complied with the sentences of imprisonment "and if you find from the evidence beyond a reasonable doubt that the defendant John Citius is guilty of robbery in the first degree by means of a dangerous and deadly weapon as charged in the information; you should convict him and assess his punishment at death or imprisonment in the penitentiary for a term not less than his natural life." The objection is that the jury should have been directed to robbery in the first degree as defined by the court in other instructions in the case rather than by reference to the charge contained in the information.

Instructions are to be read together. The instruction assailed supplemented the preceding one which told the jury that they might find the defendant guilty of robbery in the first degree with a dangerous and deadly weapon without prior conviction, or they might find him guilty of robbery in the first degree with a prior conviction or they might acquit him. The fifth instruction advised the jury of the punishment to be assessed in case it found him guilty, with a prior conviction. The first instruction which we have summarized and examined under paragraph III of this opinion gave the elements of robbery in the first degree without reference to the information. The second paragraph of the main instruction told the jury that it was the duty of the court to instruct them on all questions of law arising in the case, and it was their duty to receive such instructions as the law of the case, and to find the defendant guilty or not guilty according to the law as declared by the court and the evidence as they had received it under the direction of the court. This, of course, applied to all given instructions. The jury did not find appellant

616

guilty of a prior conviction and did not assess his punishment at death or life imprisonment. The assailed instruction used the words "as charged in the information" in a secondary manner, subordinate to the hypothesis: "If you find from the evidence beyond a reasonable doubt." As was said in State v. Taylor, 293 Mo. 210, l. c. 223, 238 S. W. 489: "The touchstone in this matter, as in the measure of instructions generally which are objected to, is, did the instruction as given tend to prejudice the rights of the defendant. Absent this essential and it does not constitute error." We rule this assignment to be without merit.

■ V. Instruction 7 informed the jury that "if you believe that any witness has wilfully sworn falsely to any material fact in issue in this case, you are at liberty to disregard, or to treat as untrue, that part of such witness' testimony." This instruction is said to be erroneous because it did not tell the jurors that they might also disregard the whole of such testimony. The same objection was overruled in State v. Brown, 270 S. W. 275.

Reversible error not appearing the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.