STATE OF MISSOURI, Respondent, v. GEORGE W. HICKS and LAURA MALOY, Appellants.

Springfield Court of Appeals. April 7, 1913.

1. CRIMINAL LAW: Conviction of Codefendants: Must be Sentenced Separately. Section 5252, R. S. 1909, requires that when several defendants are jointly tried and convicted, the punishment of each must be assessed separately. Upon a conviction of two defendants for adultery, a verdict assessing their punishment at one hundred dollars and ten days in jail and a judgment following the same form, were both erroneous. Either the court should have refused to accept the verdict and suggested the proper form therefor to the jury, or itself assessed the punishment.

2. ———: Misdemeanors: Indictment: Sufficiency of: Rule. Under statutes designed to promote and preserve morals, good order and decency, in determining the sufficiency of an indictment or information, the standard is whether the offense aimed

at by the statute is charged with sufficient particularity as to apprise the defendant of the act with which he is charged and to serve as a bar to further prosecution for same offense.

3. ——: **Adultery: Indictment and Information.** An indictment in two counts charging adultery under section 4729, R. S. 1909, examined and *held* sufficient as against objection made after verdict.

4. ——: **Joinder of Offenses: Election.** Where offenses are several, distinct and independent, there can be no joinder. But the prosecution is not bound to elect on which ·count it will proceed, where all the counts of an indictment or information relate to the same transaction.

5. ——: **Instructions on One Count Only: When Proper-** Under an indictment or information containing two counts, where the court, by instructions, limited the jury to a consideration of the charge contained in' the first· count, no error' was committed because the instructions ignored the offense charged in the second count.

7. ——: **Adultery: Circumstantial Evidence.** The proof of the offense of adultery being dependent almost entirely upon circumstantial evidence, it is proper to allow the jury to weigh all surrounding circumstances, if they have any bearing on the ultimate facts sought to be established.

8. ——: ——: **Evidence of Present Case Reviewed: Held Sufficient.** The evidence of the present case is reviewed and *held* sufficient to sustain the conviction of a married man and an unmarried woman for the offense of open and notorious adultery.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED (*with directions*).

*David W. Hill* for appellants.

(1)   Persons, in order to be guilty of living together in open and notorious adultery, as meant by the statute, must reside together publicly in the face of society, as if the conjugal relation existed between them, and their illicit intercourse must be habitual and not occasional. All of the essential elements are disproved in the case at bar, and the court erred in not

directing a verdict for the defendants. Sec. 4729, R. S. 1909; State v. Crowner, 56 Mo. 147; State v. Sekrit, 130 Mo. 401. (2) The verdict does not separately assess the punishment and this is likewise reversible error, and for this reason the motion in arrest should have been sustained. Sec. 5252, R. S. 1909; State v. Berry, 21 Mo. 504; State v. Gordon, 153 Mo. 576. (3) Each count of the indictment charges a distinct and different offense, and there is no authority for uniting such counts in the same indictment, and for this reason the motion in arrest should have been sustained. Sec. 5103 and 5104, R. S. 1909.

*Almon Ing* for respondent.

FARRINGTON, J.—Appellants were prosecuted and convicted in the Butler County Circuit Court upon an indictment under section 4729, Revised Statutes 1909, the statute leveled against adultery. The verdict of the jury was as follows: "We, the jury, find the defendants guilty as charged and assess their punishment at one hundred dollars and ten days in the county jail." The judgment followed the form of the verdict. The vedict and judgment were erroneous. The statute (Sec. 5252, R. S. 1909) plainly requires that when several defendants are jointly tried, the punishment of each, in case of conviction, must be assessed separately. The court should either have refused to accept the verdict and suggested its being put in proper form, or failing in this, should itself have assessed and declared the punishment which the jury by their defective verdict failed to do. [State v. Gordon, 153 Mo. 576, 55 S. W. 76; State v. Thornhill, 174 Mo. l. c. 371, 74 S. W. 832; State v. Person, 234 Mo. l. c. 268, 136 S. W. 296.] For this cause, the judgment must be reversed and the cause remanded with directions to the trial court to bring the defendants before it, and having done so, to proceed to assess and declare their

punishment, and otherwise proceed in the cause as required by law. In the case of State v. Berry, 21 Mo. 504, there was a verdict against three defendants assessing a fine against them of eighty-one dollars, jointly. It was held that under the statute the circuit court could not have entered a judgment jointly against all three for the sum of eighty-one dollars, and that it would not have been proper to have collected that sum from one defendant in discharge of the entire judgment, nor to have collected that sum from each of the defendants separately, and the Supreme Court reversed the judgment and remanded the cause *for a new trial.* Eighty-one dollars was not the minimum fine which could have been assessed in that case. Now in the case before us, a fine of one hundred dollars and ten days' imprisonment was not the minimum punishment which could have been assessed; hence there would be reason for contending that the order in this case should likewise be "Reversed and remanded for a new trial." But in the late case of State v. Person, supra, a different rule of action is adhered to and the case of State v. Berry is not cited. The jury in the Person case found the defendants guilty of burglary in the second degree and assessed their punishment at imprisonment in the penitentiary for the term of five years. The minimum punishment for second degree burglary is two years' imprisonment. The Supreme Court merely remanded the cause with directions to the circuit court to cure the defective verdict by calling the defendants before it and declaring their punishment upon the verdict of guilty and sentence them separately; and what that sentence should be was left to the circuit court, nothing being said in the opinion as to that question.

Other contentions of vital importance are urged in appellants' brief and require careful consideration.

Does the indictment charge an offense?

There are two counts. The first charges that these appellants "on or about the first day of February, 1910, at the county of Butler and State of Missouri, did then and there and from that day continuously until the twentieth day of January, 1911, in the county and State aforesaid, unlawfully, shamefully, openly and notoriously live and cohabit together in a state of open and notorious adultery, then and there habitually having sexual intercourse together," and then charging that George W. Hicks was a married man and Laura Maloy an unmarried woman.

The second count charges that defendants, not being married to each other, during the same time mention in the first count did "unlawfully, lewdly and lasciviously abide and cohabit with each other, and then and there have sexual intercourse together," followed by the allegation that George W. Hicks was a married man and Laura Maloy an unmarried woman.

The statute (Sec. 4729, R. S. 1909) is said to embrace five offenses (State v. Chandler, 132 Mo. l. c. 160, 33 S. W. 979; State v. Sekrit, 130 Mo. l. c. 405, 32 S. W. 977; State v. Nicholas, 124 Mo. App. l. c. 332, 101 S. W. 618), the first of which is stated by SHERWOOD, J., to be as follows: "Living in a state of open and notorious adultery by two persons of opposite sexes, one or both of whom are married, but not to each other." In the case of State v. Sekrit it was held that an indictment for adultery, must, in order to be valid, bring the accused within all the material words of the statute and nothing must be left to intendment, citing State v. Hayward, 83 Mo. 299. In the Sekrit case the only words used were, "unlawfully, shamefully and habitually having sexual intercourse together" followed by the charge that both parties were married but not to each other. Hence there was obviously an insufficiency of language to charge an offense under the first subdivision of the adultery statute. But in the case before us all the material

words were used. The general rule is that it is sufficient in an indictment charging the commission of an offense created by statute to follow the language of the statute. [State v. Newman, 152 Mo. App. 1. c. 146, 132 S. W. 753.] And in determining the sufficiency of indictments for misdemeanors under statutes designed to promote and preserve morals, good order and decency, the matter for ascertainment is whether the indictment substantially charges an offense aimed at by the statute with sufficient particularity to apprise defendant of the act with which he is charged and to serve as a bar to a further prosecution of the same offense, and that unnecessary technicalities or refinements of reasoning will not be indulged. [State v. Rouelle, 137 Mo. App. 620, 119 S. W. 55.] By the common law of England, adultery was not punishable as a crime; it was made a misdemeanor by our statute. [State v. Holland, 162 Mo. App. 678, 145 S. W. 522.] The fact that one or both of the parties are married, but not to each other, is a material fact constituting an element of the offense (State v. Hillman, 128 Mo. App. 172, 106 S. W. 603), and of course the charge to that effect in the first count was proper. The words of this count, "did . . . openly and notoriously live . . . together in a state of open and notorious adultery," were properly used; they follow the statute. The words "and cohabit" before the word "together," and the word "shamefully," are to be treated as surplusage after verdict. Section 5115, Revised Statutes 1909—the statute of jeofails—provides that no indictment shall be deemed invalid, nor the trial, judgment or other proceedings be stayed, arrested or in any manner affected, for any surplusage or repugnant allegations, when there is sufficient matter alleged to indicate the crime and the person charged; nor for the want of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substan-

tial rights of the defendant upon the merits. [State v. Clinkenbeard, 142 Mo. App. 1. c. 153, 125 S. W. 827; State v. Sovern, 225 Mo. 1. c. 589, 125 S. W. 769; State v. Yocum, 9 Mo. App. 589.]

No objection was made to the indictment until the motion in arrest of judgment was filed. If defendants thought the counts were duplicitous, they should have raised the objection at the proper time; it is not available to them in the motion in arrest (State v. Sherman, 137 Mo. App. 70, 73, 119 S. W. 479; State v. Niehaus, 217 Mo. 332, 117 S. W. 73); and they have not sufficiently raised it there. We think the first count of the indictment sufficiently charged an offense contemplated by the first subdivision of the adultery statute and is invulnerable to attack after verdict.

The second count is obviously intended to charge the offense embraced within the second subdivision of the statute, and while there is surplusage also in this charge, all the material words were used.

It is contended that each count of the indictment charges a distinct and different offense, that there is no authority for uniting such counts in the same indictment, and that for this reason the motion in arrest should have been sustained. We find nothing in that motion which goes to this point unless it be the following: "Because the record is erroneous upon its face." As a general rule, where offenses are several, distinct, and independent, there can be no joinder. [State v. Daubert, 42 Mo. 1. c. 245; State v. Sutton, 64 Mo. 1. c. 108.] But where all the counts relate to the same transaction, the prosecution is not bound to elect as to which count on which it will proceed, but may adapt itself to the exigencies of the case. [State v. Pratt, 98 Mo. 482, 11 S. W. 977.] In State v. Houx, 109 Mo. 1. c. 660, 19 S. W. 35, the Supreme Court said: "The two counts in this indictment relate to the same transaction, that of unlawfully and feloniously having carnal knowledge of the complaining witness. The

punishment for each is the same. The crimes charged are the same. The proof necessary to establish them alone differs. In such case it is 'usual to form several counts, for the purpose of meeting the evidence as it may transpire at the trial.' '' However, appellants in their brief concede, and it is the fact, that the instructions entirely ignore the offense charged in the second count of the indictment. The case was given to the jury on instructions which plainly, though not expressly, limited them to a consideration of the charge contained in the first count.

Appellants' principal contention is that all the essential elements of the offense embraced in the first subdivision of the adultery statute are disproved in this case, and that the court erred in not sustaining defendants' request for a directed verdict.

The rule as to the quantum of proof required to make out this offense is found stated in the following cases: State v. Crowner, 56 Mo. 147; State v. Sekrit and State v. Chandler, supra. But it has been recognized by judicial decision in this State that the offense of adultery is one which from its nature is almost necessarily and almost entirely provable by circumstantial evidence; and that where a fact, like adultery, is to be established by circumstantial evidence, all surrounding circumstances are proper to be weighed by the jury, if they have any bearing whatever on the ultimate fact sought to be established. [State v. Clawson, 32 Mo. App. 93; State v. Coffee, 75 Mo. App. l. c. 91, 92.]

It is deemed necessary to set forth a running summary of the testimony of the State's witnesses. *Marion Hicks,* brother of defendant Hicks, testified that he lived near the place where his brother and Laura Maloy resided; that Laura Maloy had been married, but her husband was dead; that defendant Hicks was running the farm on which she resided and that he was there part of the time—working there sometimes

and sometimes at his home; that sometimes defendant
Hicks would be there for a week at a time; that he
would stay there at night and that there was but one
dwelling house on the place with but two sleeping
rooms; that defendant Hicks took groceries and pro-
visions there the same as he did to his own home;
that said defendant had several times during the year
preceding the trial made the statement to the witness
that he did live with her and proposed to as long as
the law would let him, or until they locked him out.
*Simon Hicks,* another brother of defendant Hicks, tes-
tified as to the defendants living together and that de-
fendant Hicks told him during the year preceding the
trial that the only way they could keep him from living
with her was to lock him up. *Tom Hicks,* another
brother, testified that he had returned from Kansas
about sixty days before the trial and had lived part of
that time with defendant Hicks at Laura Maloy's
place; that defendant Hicks was there every week, as
much as a day or two each week, and that he would be
safe in saying that said defendant stayed there as
many as ten nights while the witness stayed there, and
that said defendant slept on a cot in a room adjoining
the one in which Laura Maloy slept, and that he did
not know whether they ever slept together; that he
knew they lived together but did not know they slept
together; that said defendant stayed there and claimed
it as his home—"second home anyhow;" that said de-
fendant raised a crop on that place and generally had
her cook for him. *J. H. Robertson* testified that he
lived about a mile and a half from the Maloy place;
that he knew of the defendant Hicks staying at that
place in the room with Laura Maloy at nights as much
as two or three nights a week within the twelve months
preceding the trial, and that at one time it contained
as much as five or six weeks; that he did not know
that they slept in the bed together, but that they slept
in the same room; that during this time said defend-

ant told the witness while out in the field with him one morning that "he got a piece last night" meaning from defendant Laura Maloy; that the witness stayed at the Maloy place the night before and that defendant Hicks also stayed there; that during the twelve month period preceding the trial he heard Laura Maloy make the statement that the children living on the place with her were George Hicks'. "Q. Are you swearing to the jury that George Hicks and Mrs. Maloy have lived together as husband and wife for the last year? A. I don't say that. I am just swearing that I have known they have been living that way, but not the length of time."

*H. L. Jett* who resided about a mile and a half from the Maloy place, testified: "Q. Isn't it a fact of general notoriety among the people that they do live together in adultery? A. Why, the people claim that they do. Q. Within the past twelve months? A. Well, now, I haven't heard much about it in the last twelve months; that is, about their living together in the last twelve months. Q. Have you heard of their relations in that regard ceasing? Is that a matter of notoriety? A. No, sir; I haven't heard anything about that."

*J. J. Frank,* an undertaker, testified that defendant Hicks came to his establishment on September 19, 1910, and bought a coffin for a child two years old and gave the name of the child as Laura Bell Hicks; that he said he had every reason to believe the child was his, and told about living with this woman. "Q. I will ask you if he did not state to you that his wife objected to him living with her? A. He told me his wife objected to him staying up there; but I don't remember whether he said living with her or not. Q. Well, staying up there with this other woman? A. Yes, sir. Q. The mother of this child? A. Yes, sir. Q. What did he say, if anything, with reference to his living or staying part of the time with the one

woman and part of the time with the other? A. Yes, sir; he said he stayed part of the time down on his farm, and part of the time at this other place."

*Ernest Bacon*, owner of the farm referred to as the Maloy place, testified that he had leased the place to defendant Hicks and that the latter was living on the place and told him the woman was his cook and was cooking for his hands; that he asked defendant Hicks who the children belonged to, and that Hicks laughed and said two of them were his and that this woman Laura Maloy was the mother of them; that within twelve months before the trial defendant Hicks told him that he was going to live with her if he wanted to, that he was going to take care of those children, that they were his, and that he was going to live with the woman—"couldn't stop him."

Both of the defendants admitted in their testimony that prior to about three years before the trial they had been guilty of occasional illicit sexual intercourse, and that as a result two or three children were born, but that nothing of the kind had occurred between them during the time covered by the indictment. Defendants, however, objected strenuously to this past relationship being brought out by the State's witnesses.

The State's evidence has been set forth at some length in order to show how closely in matters material this case resembles that of State v. Coffee, 75 Mo. App. 88. Following that case, we hold there was sufficient evidence in this record to uphold the verdict and it does not lie in our power to interfere. It was competent for the jury to consider the past intimacy (Linck v. Vorhauer, 104 Mo. App. 1. c. 374, 79 S. W. 478). With an admission of the defendants that the children were the offspring of their illicit intercourse in the past, and the apparent continuation of the same relation during the year covered by the indictment so

far as the world could see, and the aggressive and defiant attitude of the defendant concerning his relations with this woman during the year preceding the trial, and from all the facts and circumstances before them, we cannot say that the jury was not justified in finding the defendants guilty and putting the stamp of public disapproval on conduct entirely at variance with the recognized standards of propriety.

Let the order be entered as stated in the first paragraph of this opinion; and, as in the case of State v. Person, supra, it is ordered that the defendants recover only the costs of this appeal.  All concur.