STATE of Missouri, Respondent,

v.

Larry E. FENNER, Appellant.

No. 48975.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Thomas F. Eagleton, Atty. Gen., Robert E. Hogan, Special Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Presiding Justice.

The defendant was charged and convicted of the offense of stealing $2000 by deceit and was sentenced to imprisonment in the county jail for one year. See Sections 560.-156 and 560.161 RSMo 1959, V.A.M.S. He has appealed from the judgment entered against him.

The verdict does not specifically find the defendant guilty of the offense, "as charged," nor of stealing property of the value of more than $50 by deceit; however, the offense of which defendant was convicted is a graded or mixed felony and, in view of the amount charged to have been stolen and the general verdict of guil-

ty, the jurisdiction of the appeal is properly in this court.

■ Appellant is not represented by counsel in this court and it is our duty to consider the valid assignments of error as set out in defendant's motion for a new trial. Of course, no assignment of error respecting the sufficiency of the information, verdict, judgment and sentence is necessary upon this appeal because the appellate court is required to render judgment as to these matters upon the record before it. Supreme Court Rule 28.02, V.A.M.R. However the first assignment of the motion for a new trial is that the information does not state facts sufficient to constitute a crime under any statute or under the common law.

Section 560.156 RSMo 1959, V.A.M.S., upon which the prosecution is based, is in part as follows: "Stealing—element of offense. 1. As used in sections 560.156 and 560.161, the following words shall mean: (1) 'Property', everything of value whether real or personal, tangible or intangible, in possession or in action, and shall include but not be limited to the evidence of a debt actually executed but not delivered or issued as a valid instrument and all things defined as property in sections 556.-070, 556.080 and 556.090, RSMo; (2) 'Steal', to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property.

"2. It shall be unlawful for any person to intentionally steal the property of another, either without his consent or by means of deceit. * * *" And see the several sections referred to in this statute.

An amended information purporting to charge an offense under this statute was filed in the Circuit Court of Boone County on March 14, 1961, as follows:

"Comes now Larry M. Woods, Prosecuting Attorney within and for the County of Boone and State of Missouri, and upon his official oath informs the Court that Larry E. Fenner on or about the 3rd day of February, 1960, at the said County of Boone and State of Missouri, did wilfully, unlawfully, feloniously and intentionally steal Two Thousand Dollars ($2,000.00), the property of the Columbia Savings Bank of Columbia, Missouri, by means of deceit, and did then and there obtain said Two Thousand Dollars ($2,000.00) as a loan from said bank by falsely and fraudulently representing to said bank that he, the said Larry E. Fenner, was the owner of a certain 1952 Model A. John Deere tractor complete with plow, disc, and cultivator and there were no other mortgages or liens against said tractor, plow, disc, and cultivator, where as in truth and in fact said 1952 John Deere tractor was owned by John Reith of Kirkwood, Missouri, and said plow, disc, and cultivator had been previously mortgaged to Ellsberry Equipment Company of Ellsberry, Missouri; against the peace and dignity of the State."

■ This information was not attacked by motion to dismiss, nor was any motion for a bill of particulars filed or ruled. See Supreme Court Rules 25.05 and 24.03. The record does not show any formal arraignment of the defendant; however, that is immaterial since the defendant appeared in person and by attorney and was tried as if he had been arraigned and had entered a plea of not guilty. See Supreme Court Rule 25.04; Section 546.020 RSMo 1949, V.A.M.S.; State v. Ferris, 322 Mo. 1, 16 S. W.2d 96, 99[6].

■ The statute in question, Section 560.156 RSMo 1959, V.A.M.S., creates and denounces a new and distinct offense. State v. Zammar, Mo.Sup., 305 S.W.2d 441; State v. Gale, Mo.Sup., 322 S.W.2d 852, 854; State v. Mace, Mo.Sup., 357 S.W.2d 923. Generally speaking, an information charging the commission of an offense that is created by statute is good if it follows the language of the statute, and this is particularly true if the language of the statute which purports to define the crime sets forth all of the constituent elements of the

offense. State v. Varsalona, Mo.Sup., 309 S.W.2d 636, 639[2–3]; State v. Futrell, 329 Mo. 961, 46 S.W.2d 588, 590. Such is not the case if the statute creating the offense uses generic terms in defining the offense and does not individuate the offense with such particularity as to notify the defendant of what he or she is to defend against. We find this statute to be of the latter class. It is vitally important that every man accused of a crime should have a reasonable opportunity to know what he is charged with, and that he not be called upon to meet evidence at the trial which he could not have anticipated from the charge filed against him.

■ As stated in State v. Mace, supra: "When the Legislature (Laws 1955, p. 507, §§ 560.156, 560.161), for reasons well known to all attorneys familiar with criminal procedure, repealed the multitude of confusing statutes dealing with the many grades and differing definitions, distinctions and penalties fixed for the crimes of larceny, embezzlement, and the fraudulent appropriation of the property of another, and in lieu thereof abolished the theretofore technically described distinctions between those offenses and placed all of them within the general term of 'stealing', its purpose and intent were to avoid the many reversals of cases based upon technical grounds. But these statutes do not and could not constitutionally do away with the right of the accused to demand the nature and cause of the accusation made against him. Article I, § 18(a), Constitution of Missouri, V.A. M.S. The requirements of an indictment or information have been thus well stated: 'First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.' United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 574, 31 L.Ed. 516. See also United States v. Callanan, 1953, (U.S.D.C., Mo.) 113 F.Supp. 766."

As to the validity of the information respondent says: "The word 'steal' is defined by statute, and the information alleges intentional stealing, by means of deceit, and then sets forth the deceitful means used"; and that this should be sufficient.

It will be noted that the information does not specifically describe the property charged to have been stolen by deceit, nor does it charge that the defendant, on the date mentioned, obtained "$2000 in lawful money of the United States of the value of $2000" from said bank, nor does it specifically describe any other property, tangible or intangible, such as a check, draft, certificate of deposit, credit, et cetera, of the value of $2000, although it is subsequently charged that $2000 was obtained "as a loan from the bank." Even the term "as a loan" might be considered ambiguous since the information does not expressly allege that the mentioned $2000 was in lawful money of the United States of the value of $2000.

■ Respondent insists that the essential question before the court is whether the information "properly charges the defendant with the offense of stealing by deceit"; however, we have reached the conclusion that in view of other defects in this record we need not determine the validity of this information or whether it would be sufficient under the Statute of Jeofails, Section 545.290 RSMo 1959, V.A.M.S., if the record was otherwise sufficient. Instead, we shall consider the sufficiency of the evidence to show any offense under the statute.

Various assignments of error in the motion for a new trial are directed to the sufficiency of the evidence to support the verdict of the jury and error is particularly assigned on the court's refusal to direct a judgment of acquittal at the close of all the evidence. Supreme Court Rule 26.10. A review of the State's evidence is required. The State's evidence tended to show that on February 3, 1960, defendant was indebt-

ed to the Columbia Savings Bank of Columbia, Missouri, on a note for $1985 dated December 31, 1959, due and payable thirty days after date and secured by a chattel mortgage of the same date. Across the right end of the face of the note was the typewritten word "tractor". The property described in the chattel mortgage was as follows: "1952 model A John Deere tractor complete with plow, disc, mower and cultivator." No further description appears; no serial numbers were shown. The location of the property was not specifically designated and no one was named as being able to identify the property.

When the note became due and payable the defendant did not pay it, nor did he respond to notices mailed by the bank to him at Ashland, Missouri (the post-office address given on the note). On investigation, a representative of the mentioned bank located the defendant in the Boone County Jail at Columbia, Missouri. On January 19, 1960 (prior to the mentioned date) the defendant had entered a plea of guilty to a charge "of writing an insufficient funds check" and had been fined twenty-five dollars and costs, which fine and costs had apparently not been paid as the defendant was in the Boone County Jail on February 3, 1960. In any event, a representative of the bank interviewed defendant at the jail and defendant requested a new loan to pay off the old one, that is, he asked for further time to pay off the indebtedness evidenced by the note of December 31, 1959.

Defendant was advised that the bank "was not going to carry a machinery loan indefinitely" and that additional security was required, if there was to be any extension of time. Defendant agreed to give some additional security to wit: some sows and pigs and an International truck. Thereupon a new note was prepared, dated February 3, 1960, for $2000 payable "on demand" to the bank, and a new chattel mortgage drawn to include the additional property given as additional security and both were signed by defendant. Since the evidence shows that the note of February 3, 1960, was for the same indebtedness evidenced by the note of December 31, 1959, we assume the $15 increase was accrued interest. In any event there is no evidence that defendant obtained any additional money or credit in any form. Across the left-hand end of the face of the note of February 3, 1960, were the following words:

"1952 John Deere tractor with equiptment [sic]
"4 Hampshire sows and 39 pigs
"2      "     °  "      "        increase
"International truck-1953"

The tractor and machinery described in the February 3, 1960, chattel mortgage were the same as in the prior chattel mortgage of December 31, 1959. The sows and pigs were described as was shown on the face of the note, but the truck was described in the chattel mortgage as a "1953 International truck, Engine #13262." On the face of the chattel mortgage below the described property were the words, "There are no other mortgages or liens against personal property conveyed herein." There was no further description of the property, no notation as to where it was located or by whom it could be identified. Subsequently defendant's wife delivered the truck title to the mentioned bank.

The prosecution in question is based upon the mentioned occurrences of February 3, 1960. The evidence shows that the representations in the chattel mortgage, as to the absence of other mortgages and liens, was read to and discussed with defendant prior to the time this chattel mortgage was signed and accepted by a representative of the mentioned bank and the defendant represented that all were free and clear.

At the time defendant signed this new note for $2000 and gave the mentioned additional security the bank did not surrender to him the $1985 note dated December 31, 1959, or place any credits on it, nor did the bank release the chattel mortgage securing the same. A representative of the bank testified that he said to defendant: "Larry,

since you are in jail and there might be a question as to whether somebody else got this stuff I will keep this note for you in our files and hold it because I want the protection for us." The witness also testified: "I told Mr. Fenner at the time that I took the new chattel mortgage that since he was in jail that I did not know whether there were other suits, or something, involved and I was still going to hold that in my files until that was paid. When that was paid I would release both of them at the same time."

Thereafter the defendant was unable to pay the note of February 3, 1960. When it became due, the sows, shoats and pigs were taken under the chattel mortgage and sold; however, the bank was only able to locate fourteen or fifteen pigs out of the thirty-nine mentioned in the chattel mortgage of February 3, 1960. Defendant was unable to account for the shortage, unless they were stolen. He further testified that his farm had been sold under foreclosure and his property dissipated. After the sale of the livestock and the truck and after their proceeds had been credited on the note, and after certain other credits were given, a balance of $1500 of principal remained due and unpaid on May 2, 1960. After the sale of the truck and the hogs, the bank undertook to assemble the tractor and other machinery which they believed to be covered by the chattel mortgage. It was assembled and placed at a filling station near Columbia pending a foreclosure and sale of the property under the chattel mortgage. Prior to such foreclosure it was repossessed by other persons who claimed to own it, or under prior chattel mortgages which had been filed in the counties in which the property had previously been located, except the mower, which was in fact owned by defendant. The mentioned mower, owned by defendant, was not subject to any prior liens or mortgages and was shown to be worth $150 to $200. If it should be sold by the bank the proceeds will further reduce the defendant's indebtedness.

Over defendant's objections (but for the purpose of showing defendant's intent to defraud the mentioned bank), the State was permitted to show prior dealings between the Columbia Savings Bank and the defendant. One Harold E. Cox, Vice-President of the Columbia Savings Bank of Columbia, Missouri, testified that he became acquainted with the defendant in November, 1959; that defendant wanted a loan to purchase Christmas trees and Christmas decorations on a thirty-day basis until he could collect his money from the sale of the Christmas trees and Christmas decorations. He wanted to borrow $2000. When advised that security would be required, the defendant stated that he had equipment—tractor, plow and other things free of debt that he could use for security, if a loan could be obtained. He described the equipment as being worth as much as $2000, to wit: A tractor, a cultivator, a plow, a mower and a disc. Thereafter, "a loan" was made in November, 1959. The terms of the loan were for thirty days to give defendant time to get "his merchandise out and collect the money in." A chattel mortgage was also drawn at that time. A copy of the chattel mortgage was not in evidence, but witness Cox said that it covered a John Deere tractor and the equipment that goes with it—a plow, cultivator, disc, a harrow and a mower. He stated that defendant said the security was free from debt and that defendant represented that he had other equipment, but the loan was made on the items mentioned in the chattel mortgage. Defendant was the only signer on the note and chattel mortgage. The witness did not remember the exact date "the loan" was made, but he thought it was in November 1959. Defendant paid $15 on this loan and applied for a new loan to pay off the balance due. A new loan in the amount of $1985 was made on December 31, 1959, for that purpose, as stated. Over defendant's objections, the note and chattel mortgage of December 31, 1959, were identified and offered in evidence, and there was testimony that the prior note and chattel mortgage (executed sometime in No-

vember 1959) were released and delivered to defendant.

Except for the testimony that a "loan was made" to defendant, we find no evidence offered by the State as to how or by what means or in what form or manner the defendant received the original loan, that is, as to whether he was given $2000 in lawful money of the United States of the value of $2000; whether he was given a check, a draft or a deposit slip or credit with the bank for such a sum.

After the court had permitted the State to show how the original indebtedness was incurred and the execution of the successive documents evidencing the indebtedness, the defendant testified that after the original loan was made to him and the negotiations completed in November 1959, "I got up and I walked over to the window over there and I told the lady I would like to draw out about $400.00, that I had some Christmas tree lights and bulbs coming in from Kansas City. She gave me the money and I walked out of the bank." This is the only evidence we find in the record that defendant received anything at any time, except as might be inferred from the words "made a loan."

■ In determining the sufficiency of the evidence to make a case for the jury we consider only the State's evidence in support of the verdict returned. We consider the State's evidence as true, together with such legitimate inferences as may reasonably be drawn therefrom. State v.

Green, Mo.Sup., 305 S.W.2d 863, 870[10, 11]. Hence we need not here review defendant's evidence tending to show that the machinery attempted to be repossessed by the bank was not the property intended to be covered by the chattel mortgages, nor do we need review the testimony of the defendant as to his ownership of a tractor and other machinery that met the descriptions in the chattel mortgages, and that the tractor, free and clear of liens, was located in another county.

■ We find no evidence in the record to support the verdict of guilty of stealing by deceit on the date charged and submitted (February 3, 1960). How did defendant violate the statute? What did he obtain? He received no cash or credit. No extension of time was granted. Defendant was not guilty of stealing by deceit on the date charged. The bank retained the old note of December 31, 1959, which bore interest of eight per cent, and received a new demand note with additional security. There was also an agreement that the prior note was not to be surrendered or the chattel mortgage satisfied until the note of February 3, 1960, was paid. The bank, on the added collateral, realized some $500 and the mower has not yet been sold.

The court erred in overruling defendant's motion for judgment of acquittal offered at the close of all the evidence.

The judgment is reversed.

All concur.