STATE of Missouri, Respondent,

v.

Jack BALLARD, Appellant.

No. 51023.

Supreme Court of Missouri, Division No. 2.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Floyd L. Sperry, Jr. Sp. Asst. Atty. Gen., Clinton, for respondent.

F. Neil Aschemeyer, Richard L. Daly, O'Hanlon & Daly, St. Louis, for appellant.

EAGER, Presiding Judge.

Defendant was indicted by a Grand Jury of the City of St. Louis for the theft of a

Chevrolet car in that city, in violation of § 560.156.[1] He was also charged with the commission of two prior felonies. The court made an appropriate finding of the prior convictions, the jury found defendant guilty, and the court sentenced him to a term of imprisonment of five years. Defendant was represented at the trial and is represented here by counsel of his own choice. After a detailed and specific motion for new trial was overruled, the defendant appealed.

The facts shown in evidence were, in substance, the following. Defendant had for several years been in the automobile salvage business, selling parts, buying cars, dismantling cars, and occasionally selling entire cars. His place of business was a lot at 4109 North Broadway in St. Louis. On November 5, 1963, one Arthur Werremeyer, who lived in an apartment building at 7543 Parke Towne North in St. Louis County, was the owner of a 1960 white Impala Chevrolet, a four-door hardtop, in good operating condition. It carried a state license plate, a Ladue sticker and a parking permit sticker. At about 6:00 p. m. on November 5, Mr. Werremeyer left his car parked in front of his apartment, locking all four doors, and taking the keys in with him. At about 7:30 the next morning, November 6, he found that the car was gone. He had given no one permission to take it or use it. He next saw it about 9:30 on the same morning at defendant's salvage yard, where he identified it although it was then partly dismantled. He did not know the defendant.

At some time around 8:00 a. m. on November 6, 1963, two St. Louis detectives and at least one patrolman went to defendant's salvage yard; they found defendant, Cal Smith and Paul Baykowski at or near a white, 1960 Chevrolet Impala, which was then "back of the shacks" or, as we understand, at the back of the lot. Defendant Ballard had a hammer in his hand and was breaking out the rear glass; Smith

was standing in front of the car with a lighted acetylene torch. The hood, the front fenders, the trunk lid, three doors, the windshield and the spare tire had been removed; the state license was gone and the windshield stickers had been removed except for an unidentifiable part of one. The manufacturer's serial number plate had been removed from the left door post or panel. When questioned, defendant stated that he had bought the car that morning for $750 from a "dealer" on the south side, that he was dismantling it because it had a bad transmission, and that he would produce the title "at the proper time." The car was taken to a police garage, where the secret identification number was located on the frame; this checked with the number on Mr. Werremeyer's title. The record does not show specifically why the officers went to defendant's place at that particular time, although they customarily checked salvage yards from time to time. Defendant and his two companions were arrested and defendant was questioned briefly at the police station, before being released on bond.

Defendant testified: that he bought the car for $750 on the morning of November 6, 1963, from a man who gave the name of Floyd Colyer, and who claimed that he dealt in used cars from time to time from his home; that he got a title and a bill of sale from this man; that the man would not take a check and he paid him in cash; that he was told that the transmission was bad, and that he was dismantling the car because it had a good body and he could get more for the parts than for the car as a whole; that he had removed the identification plate and scraped off the stickers, but if the car had any state license plate, it was removed by the man who sold it. We note the following testimony in somewhat more detail, since it concerns a point made on the admission of evidence. On cross-examination, defendant was asked his "procedure" with respect to a title when

he cut a car up for salvage; his answer was: "I have titles down there at my office, maybe three hundred titles, sir. I keep them in a box. Destroy the titles after the car is completely gone." He was then asked if, under the law, he was not required to send them in to the Department of Revenue; this was objected to as assuming "what the law is," and as "not an issue involved in this case." The objection was overruled, and defendant testified that he was not so required so far as he knew. He was further asked if he did not know that it was "against the law" to remove an identifying plate, and he answered that he did not; on re-cross, he further testified that on salvaged cars he kept the plates and the titles in his records until "the car is gone, and the title gets old * * *."

Abraham Rubin testified that he bought and sold auto salvage; that he knew defendant and did business with him; that he was at defendant's lot when defendant bought the car in question and that he loaned defendant $200 in cash with which to complete the purchase because the seller would not take a check. On cross-examination he was asked the "procedure" for handling the title to a car which was being cut up for salvage. This question was objected to as not within the issues, the objection was overruled, and the witness answered that the only requirement he knew of was that "we are supposed to keep it * * *"; he was also asked if he knew the "requirement of the law" concerning the title, and he answered that no one had ever given them a "straight answer" on that; that no salvage yard knew the answer and therefore all of them had a lot of titles "laying around"; that, specifically, the Department of Revenue said that "they don't know what to do about them." There was other evidence, offered on behalf of defendant, which might be considered as indicating that a title to the car in question was transferred by a dealer to one Floyd Colyer, but this is im-

material on the issues of the present appeal.

■ In rebuttal the State recalled Detective Harold Westbrock of the Auto Theft Squad; counsel asked him if he was familiar with the "rules and regulations and requirements of the Department of Revenue" regarding salvaged cars; he answered that he was. He was then asked what such requirements were with respect to the handling of the titles. Defendant's objection was overruled; the objection will be discussed later. The witness answered that "The law states, upon junking of an automobile, for salvage purposes, the title must be surrendered, for cancellation, to the Director of Motor Vehicle Registration, within ten days. * * * The title is thereby cancelled." The witness was then asked about the rules or regulations "in respect to the disposition of serial number identification tags on plates." He answered: "The law states that any one who is found guilty of defacing, altering or removing the manufacturer's serial plate, or motor number, or any other distinguishing number, from the automobile, is guilty of a felony." At the close of the testimony of this witness defendant moved for a mistrial for the reasons that the witness had testified that defendant was guilty of a felony other than the one for which he was being tried, that the testimony was not proper rebuttal, and that the statement of the law and of another crime was introduced only to prejudice the defendant. The motion was overruled. The original objection to this testimony was that the proposed testimony was not proper rebuttal, that the defendant had not claimed to know all the rules and regulations, but had merely testified to what he did, and that it was now proposed to show that what he did was a violation of the law. We consider that this objection, when it was overruled, was applicable to the entire line of similar testimony. We also hold that, while the objections might have been more specific, they were sufficent to advise the

trial court of the substance of the points now raised.

The rebuttal testimony just related is the basis for the first five of appellant's points which we shall consider together. In substance, they are that the admission of this testimony constituted prejudicial error for the reasons: that it purported to show the commission of separate, independent and unrelated crimes which had no legitimate tendency to show defendant's guilt of the crime for which he was on trial; that it constituted statements of legal opinions and conclusions invading the province of the court; that it did not constitute legitimate rebuttal of any of defendant's testimony and at most could only have been a rebuttal of collateral facts in evidence.

■■■ We doubt that this testimony constituted proper rebuttal of the defendant's testimony, but a discussion of that somewhat intricate question is not necessary to this decision. We hold that the evidence was improper and prejudicial for the reason that the witness was allowed to testify to matters of law which, under the evidence already admitted, tended to show that the defendant was guilty of numerous independent and prior crimes. One of the cornerstones of our system of jurisprudence is the principle that questions of fact are to be determined by a jury, and that all matters of law are to be determined and declared by the court. Consequently, a witness may not be allowed to state his opinion of the existing law. Huff v. United States (CA 5), 273 F.2d 56; State v. Hayes, Mo., 247 S.W. 165; State v. Buckner, Mo., 80 S.W.2d 167; Myres v. United States (CA 8), 174 F.2d 329; Rhodus v. Geatley, 347 Mo. 397, 147 S.W. 2d 631, 635(8); Woodall v. Woodall, Mo. App., 15 S.W.2d 890, 993; 7 Wigmore on Evi., 3rd Ed., § 1952. The questions to this witness fairly called for legal conclusions, for the "rules and regulations" (if such there be) necessarily had their foundation in the statutes. Section 301.220 (return of title); Section 301.400 (removal or al-

teration of manufacturer's number). Incidentally, Section 301.400 contains a requirement ignored by the rebuttal witness, namely, that the motor vehicle be "the property of another." That is perhaps not material here in any sense, but it illustrates the dangers of accepting the law from a witness.

■■■ Counsel for the State insist that since defendant had testified on cross-examination that he had possibly three hundred other titles to salvaged cars, and had removed a like number of identification plates, the State might legitimately show that his acts therein constituted violations of the law, for the purpose of showing "motive, intent and the commission of a lesser offense than that charged in the indictment." The last of these suggestions is a surprising statement; a lesser offense may only be established where it is necessarily included in the greater offense actually charged, and proven by the evidence. 27 Am.Jur., Indictments and Informations, §§ 193–194; State v. Moon, 221 Mo.App. 592, 283 S.W. 468. Removing an identification plate in violation of § 301.400 is a wholly different offense from that of stealing a car. As to "motive and intent," the rule is well stated in State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, at loc. cit. 307, where the court said: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motives; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' The test of whether evidence of other distinct crimes falls within any of these exceptions has been aptly stated as follows: 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely

because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.' State v. Lyle, 125 S.C. 406, 118 S.E. 803, 807; State v. Gregory, 191 S.C. 212, 4 S.E. 2d 1."

 See also: State v. Garrison, 342 Mo. 453, 116 S.W.2d 23; State v. Buxton, 324 Mo. 78, 22 S.W.2d 635; State v. Summers, Mo., 362 S.W.2d 537; State v. Mobley, Mo., 369 S.W.2d 576; State v. Atkinson, Mo., 293 S.W.2d 941; State v. Negron, Mo.App., 374 S.W.2d 622; State v. Selle, Mo., 367 S.W.2d 522; Wharton, Crim.Evi., 12th Ed., § 233. A determination of this question here merely affords an additional reason for our ruling, since the legal conclusions that the other and separate acts of defendant were crimes were wholly inadmissible, and we have held that their admission constituted prejudicial error. However, we also hold that the supposed acts of defendant in keeping three hundred other titles and in removing three hundred other identification plates, in wholly independent and isolated transactions, were not so related to the cause on trial as to have a legitimate tendency to establish his guilt, or to prove any material element thereof. It is true that defendant's volunteered statement concerning his previous handling of titles and plates was in evidence, but that did not justify the State in establishing such acts as crimes. Defendant's own testimony was before the jury as a statement of *fact* for whatever it might be worth. Obviously,

it was proper for counsel for the State to ask defendant concerning his handling of the supposed title and the identification plate on the car directly involved; that would go to the question of motive and intent with reference to the present charge. On the admissibility of the rebuttal testimony to prove intent defendant cites State v. Mangiaracina, Mo., 350 S.W.2d 796, and State v. Woolsey, Mo., 328 S.W.2d 24. The facts in those cases as well as the law declared, are so wholly irrelevant here that it is not necessary to discuss them. In view of all the foregoing, we need not discuss the further contention that the rebuttal evidence was admissible as an impeachment of the defendant.

A point is also made of error in the admission of certain testimony of the witness Rubin concerning the "procedure" for handling titles on cars which are salvaged. What we have already said should cover that situation, and we do not discuss the point.

 Although what we have said necessarily results in a reversal of this judgment, one additional matter must be discussed since the case will be remanded. Defendant's last two points, as we thus consolidate them, are that there was a fatal variance between the indictment and Instruction No. 2, and that the indictment was not sufficient to inform him adequately of the offense for which he actually was tried. The indictment charged the theft of the car in the City of St. Louis; the evidence showed that the owner last saw his car intact in St. Louis County on the evening of November 5, 1963; he later saw it, partly dismantled, in defendant's lot in the City of St. Louis on the next morning. Instruction No. 2 (the State's principal instruction) submitted to the jury a theft hypothesized as committed "at the County of St. Louis * * *." We hold that this constituted a fatal variance between the charge and the submission. We do not pretend to know whether the defense would have been different had the charge and the instruction

conformed, nor need we inquire; counsel say that defendant was thus prevented from presenting a possible defense of alibi to the charge of a theft in St. Louis County. The place of an offense should be charged in an indictment with reasonable certainty, both to establish venue and to properly inform the defendant. 27 Am.Jur., Indictments and Informations, §§ 75–76. The allegation of a place in the indictment is of no value, either for venue or information, if the State is to be allowed to fix the crime at a different location at the trial. The State relies upon § 541.070, Amended Laws 1955, which is as follows: "When property is stolen or taken by robbery in one county and brought into another the offender may be prosecuted for such stealing or robbery in the county into which such stolen property was brought in the same manner as if such stealing or robbery had been committed in that county." A similar act has been on our statute books since 1835. RSMo 1835, p. 483, § 14. The basic theory of a larceny is a wrongful taking of possession from the owner, a trespass. State v. La-France, Mo., 165 S.W.2d 624, 625, 146 ALR 529; thus a larceny is complete when the property is wrongfully taken from the owner's possession. This concept has been considerably broadened in our stealing statute, § 560.156, Laws 1955, p. 507, which now includes the prior offense of embezzlement (and others) as well as larceny. The transportation statute, § 541.070, supra, was amended in 1955 to conform to the stealing statute. Questions have arisen in the past as to whether the transportation of stolen property from the county where it was stolen in this state into another county constitutes a new or continuing offense of larceny or stealing in the second county, or whether § 541.070 merely provides an alternate venue for prosecution of the offense committed in the original county. State v. Bockman, 344 Mo. 80, 124 S.W.2d 1205, 1206, and cases therein cited; State v. Parker, 301 Mo. 294, 256 S.W. 1040. And see the excellent discussion in Washington University Law Quarterly, 1958,

No. 1, p. 33 et seq., particularly pages 48–53, and 80–83, and cases cited in Note 77 on page 50. That question may better be discussed in a case where it is directly and necessarily involved. Bockman, supra, considers the section as a venue statute, and it is the last decision to which we have been cited. Here the State alleged the offense in *one* county (the City of St. Louis) and submitted it as occurring in a *different* county. That is not permissible under any construction of § 541.070 for, even under the broadest construction of the transportation theory, the offense must be both alleged and submitted as occurring in one county. Upon remand the State may pursue such course as it deems proper, but it must be a consistent one. We do not pretend to hold whether or not the evidence would have supported a charge of stealing in St. Louis County, for no objection is made to the sufficiency of the evidence, and there was no such charge; we merely hold that there was a fatal variance between the charge and the submission, and that the reasonable and probable result was to mislead the defendant. He is entitled to know the nature and cause of the accusation. State v. Fenner, Mo., 358 S.W.2d 867, 870. And this, as we conceive it, applies to the accusation made at the trial, as well as that stated in the information or indictment.

The cited case of State v. Dobson, Mo., 303 S.W.2d 650, certiorari denied 355 U.S. 964, 78 S.Ct. 554, 2 L.Ed.2d 539, is inapplicable here because that prosecution involved the theft of property outside Missouri, for which the defendant was prosecuted in Missouri. The statute involved there was § 541.040, which specifically provides that the "stealing or robbery may be charged to have been committed, * * * in any county into * * * which * * * such stolen property shall be brought." Section 541.070 contains no such authorization, and the inference is perhaps to the contrary by virtue of the words: "* * * *as if* such stealing or robbery had been committed in that county." (Italics are ours.) We suggest that, in an offense

which would have constituted larceny under the old law, the State might well allege the commission of the offense of stealing in the original county, the transportation of the property into the second county, and the institution of the prosecution there under authority of § 541.070. See People v. Prather, 134 Cal. 386, 66 P. 483, 724; People v. Bundy, 324 Ill. 190, 154 N.E. 900; and note, again, State v. Bockman, 344 Mo. 80, 124 S.W.2d 1205.

For the reasons stated, the judgment is reversed and the cause remanded for such further proceedings as the State may see fit to take.

All of the Judges concur.